86 P.3d 778 (2003)
120 Wash.App. 1
PACIFIC INDUSTRIES, INC., a Washington corporation, Appellant,
v.
Joginder ("Joe") P. SINGH, a married man; and the marital community comprised of Joginder P. Singh and Jane Doe Singh, husband and wife, Respondents.
No. 52011-3-1.
Court of Appeals of Washington, Division 1.
November 17, 2003.
Publication Ordered and Reconsideration Denied February 3, 2004.
*779 Michael W. Babcock, Montgomery Purdue Blankenship & Austin PLLC, Seattle, Counsel for Appellants.
Christopher R. Osborn, Foster Pepper & Shefelman PLLC, Scott R. Sleight, Short Cressman & Burgess PLLC, Seattle, Counsel for Respondents.
*780 AGID, J.
Appellant Pacific Industries (Pl) appeals a trial court's decision denying its motion to release a mechanics lien and awarding attorney fees to the lien claimant, Respondent Joginder Singh. It claims the trial court erred by ruling that the lien was not frivolous when Singh did not have the right to file a lien under chapter 60.04 RCW, the lien was not excessive, and Pl's motion for reconsideration was filed after the 10 day period allowed under Civil Rule 59 expired. We conclude that although the development services Singh performed are not lienable services under chapter 60.04 RCW, the trial court correctly determined the lien was not frivolous or excessive. We also conclude the trial court denied the motion for reconsideration on untenable grounds. But, because we review and affirm the decision here, there is no reason to remand the case.

FACTS
From April 1990 to November 2001, Singh worked as a property developer[1] with Pl, a Washington corporation engaging in acquiring property for residential development. Under an oral contract, Singh managed and coordinated residential developments in return for 50 percent of all net profits from each project, plus wages. In the summer of 2000, Pl acquired Poole's Park, a 10 acre parcel located in Covington, Washington. The project was divided into three phases, and at the end of each phase, approximately one third of the total number of lots was to close.[2] Singh managed and coordinated the project's development. Under the financing arrangements with the lending bank, all the proceeds from the sale of Phase I and II lots were to be paid to satisfy Pl's loan obligations. Under this arrangement, Pl would not begin to make a profit until after the Phase III closing.
In November 2001, before any Poole's Park phase was completed, the parties agreed they would not develop any more projects together. As part of their mutual decision to terminate their working relationship, they reviewed the accountings of net profits for projects they worked on together.[3] Pl told Singh that because there would be little or no profit from Poole's Park, it would not owe him any money for that project. Pl provided Singh with accountings to support the lack of profits on the project. Singh disputed them because he believed they included unsubstantiated costs that improperly increased the project expenses. Singh filed a lien against the Poole's Park property, claiming Pl owed him $250,000 that represented what he believed was half the net profits.
On March 19, 2002, Pl commenced an action under RCW 60.04.081, seeking a court order releasing Singh's lien as frivolous and made without reasonable cause, or alternatively, a court order reducing what Pl claimed was an excessive lien amount. It also sought attorney fees. In April 2002, Pl and Singh agreed to retain an independent accountant. The show cause hearings for the lien, required by RCW 60.04.081, were continued pending the accountant's completed report. During the six months the accounting was pending, Singh agreed to execute partial lien releases to enable Pl and its buyer to close on the completed phases of the project. In the end, the accountant concluded that Poole's Park did not make a profit but in fact operated at a loss. Based on the report, Singh fully released the lien against Poole's Park.
The parties agreed to schedule a show cause hearing to address the issue of attorney *781 fees. At a hearing on January 7, 2003, the King County Superior Court denied Pl's motion and granted Singh's motion for attorney fees. It also denied Pl's motion for reconsideration and its motion opposing Singh's entry of judgment. On March 5, 2003, the court entered a $10,063.50 judgment against Pl for Singh's attorney fees. Pl appeals.

ANALYSIS

I. Was the lien frivolous?
To be frivolous, a lien must be improperly filed beyond legitimate dispute.[4] Even if a lien is ultimately found to be invalid, it is frivolous "only if it presents no debatable issues and is so devoid of merit that it had no possibility of succeeding."[5] Every frivolous lien is invalid, but not every invalid lien is frivolous.[6] Statutory liens are in derogation of common law.[7] A lien statute must be strictly construed to determine whether the lien attaches, and its benefits will be extended only to those who clearly come within the statute's terms.[8] A trial court's interpretation of the construction lien statute is a question of law that the Court of Appeals reviews de novo.[9] A court's principal objective in interpreting a statute is to give effect to the Legislature's intent[10] and its clear language.[11] If a term is defined in a statute, we must use that definition.[12]
Pl argues Singh's lien for the work he performed for the Poole's Park project is frivolous because his services are not lienable under chapter 60.04 RCW. Singh asserts the work he performed was "labor" under the statute. We conclude the development services Singh performed are not lienable services under RCW 60.04. The services a developer like Singh provides do not clearly come within the statute's terms, and the case Singh cites as authority for his proposition is distinguishable from this case.
RCW 60.04.021 states:
Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.
Singh argues that his work on Poole's Park constitutes "furnishing labor ... for the improvement of real property."[13] The lien statute defines "furnishing labor" as "the performance of any labor ... for the improvement of real property."[14] It defines labor as "exertion of the powers of body or mind performed at the site for compensation."[15] "Site" is defined as the real property that is being improved.[16] Finally, "improvement" means "[c]onstructing, altering, repairing, remodeling, demolishing, clearing, *782 grading, or filling in, of, to, or upon any real property or street or road in front of or adjoining the same."[17] Singh performed the following types of services on the Poole's Park project:
Type 1Negotiation
 He negotiated the purchase price of the Poole's Park property and the terms of the promissory note;
 He negotiated the terms of Pl's land acquisition and development loan;
 He negotiated the terms of the purchase and sales agreement with Harbor Homes;
Type 2Contract Execution
 He signed the agreement to purchase the Poole's Park property;
 He signed the purchase and sale agreement with Harbor Homes, the subdivided lots purchaser, on behalf of Pl;
 He signed contracts on behalf of Pl with various licensed contractors to perform preliminary site work, including a home demolition on the property and retention pond construction;
 He entered into a contract on behalf of Pl with a licensed general contractor to construct plat improvements;
 He executed developer agreements from utility companies to provide electrical, sewer, and water service to the property.
Type 3Construction Management & Coordination
 He obtained the necessary permits for improvements to the property;
 He met with the engineers about changes to the engineering drawings;
 He purchased and provided materials for construction;
 He managed the construction;
 He periodically visited the site to check on the construction progress.
It is clear under the express terms of the statute that the first two types of servicescontract negotiation and execution-do not constitute "labor" because they are administrative tasks that do not "improve" the subject property and are not performed "at the site." Similarly, the management and coordination services that Singh performed do not clearly constitute an "exertion of the powers of body or mind performed at the site for compensation"[18] because with the exception of periodic site visits, Singh performed all of the work away from the property being improved. Singh contends that his management and coordination services are lienable as "labor" because the Washington Supreme Court equated management with "labor" in Willett v. Davis.[19] But Willett is distinguishable from this case.
In Willett, a contractor sought to foreclose a lien for the unpaid balance of its contract. The issue was whether a contractor could lien the services of a superintendent and a foreman as "labor" under the lien statute when they "sawed no boards, hammered no nails, and handled no tools."[20] The Washington Supreme Court concluded the superintendent's and foreman's services could properly be included in the lien,[21] distinguishing operative services provided by a superintendent and foreman from administrative services. The court found significant that the supervisory services were part of the contractor's entire labor and materials contract. Here, the services were not part of a larger, lienable, labor and materials contract between an owner and a general contractor. And Singh's services, even considering his periodic site visits and off-site construction coordination, were not "on the operative level"[22] like those of the superintendent and foreman in Willett who performed their supervisory and directory services at the job site.[23] Accordingly, Willett does not support Singh's position that "labor" equates with the management and *783 coordination services of a developer like Singh for purposes of filing a lien under the statute. In sum, we conclude the Washington lien statute does not clearly include developer services as lienable services, and the services rendered in Willett are distinguishable from the services provided here. If the Legislature intends to include those providing development services under the act, the statute must expressly provide that those services are lienable.
We next address Pl's argument that because Singh's services are not covered under the lien statute, his lien is frivolous. We conclude it is not. A lien is frivolous "only if it presents no debatable issues and is so devoid of merit that it had no possibility of succeeding."[24] That is not the case here. There is a debatable issue of law because no Washington authority holds that a person providing development services cannot file a lien under chapter 60.04 RCW. And although we reject his argument, Singh legitimately disputed he had this right. Accordingly, the trial court properly concluded the lien was not frivolous on this basis.

II. Was the lien excessive?
An appellate court will uphold a trial court's finding of fact if it is supported by substantial evidence.[25] A materialman's lien will be declared invalid because it is excessive only if the amount is claimed with an intent to defraud or in bad faith.[26]
In this case, Pl contends the trial court erred by concluding the lien was not clearly excessive. We disagree for two reasons. First, the trial court's finding is supported by substantial evidence. In his affidavit, Pl President Bruce Clibborn testified that Pl anticipated a profit of $55,000 on the Poole's Park project. In contrast, Singh testified that he believed the profits from Poole's Park would be a minimum of $400,000. This testimony suggests there was a legitimate dispute about the profit amount. The trial court is not required to decide the merits of the dispute in a summary proceeding under RCW 60.04.081 when the facts do not clearly indicate the lien is excessive.[27] The record reflects that it took six months to confirm the actual profits for the Poole's Park project, suggesting the amount was difficult to determine. Nor is there any evidence in the record that Singh claimed the lien amount in bad faith or with the intent to defraud. Although Pl alleges in its briefs that Singh could not have claimed the lien amount in good faith because he failed to explain his reasoning or provide calculations supporting his estimate, this speculative allegation does not satisfy Pl's burden of establishing bad faith or intent to defraud. Because there was substantial evidence of a legitimate dispute about the amount of profits for the project and absent any evidence of bad faith or an intent to defraud, we conclude the trial court correctly concluded the lien is not invalid as excessive.[28]

III. Motion for Reconsideration
A motion for reconsideration under Civil Rule 59 is addressed at the sound discretion of the trial court, and it will not be reversed absent a showing of manifest abuse.[29] A trial court abuses its discretion *784 when it exercises it in a manifestly unreasonable manner or bases it upon untenable grounds or reasons.[30] Civil Rule 59(b) and King County Local Rule 7(b)(5)(A) require that a motion for reconsideration be served and filed no later than 10 days after entry of judgment. Civil Rule 6(a) governs how that 10 day period is computed. It provides that the last day of the 10 day period be included unless it falls on a Saturday, Sunday, or legal holiday, in which case the 10 day period continues until the end of the following day.
Pl complains that the trial court abused its discretion when it refused to consider its motion for reconsideration because Pl filed it on January 21, 2003, one day after the due date and Martin Luther King Day, a legal holiday in Washington. Under Civil Rule 6(a), the motion was timely filed one day following a legal holiday. While we agree the trial court abused its discretion by refusing to consider the motion, we need not remand because we have reviewed the issues and affirmed the trial court's decision in this appeal.
WE CONCUR: COX, A.C.J., and ELLINGTON, J.
NOTES
[1] Singh is a principal in JG Real Estate Northwest LLC, which is a licensed contractor. As an individual, Singh is not a licensed contractor in the state of Washington.
[2] Twenty lots were scheduled to close 30 days after final plat approval and when building permits were issued (Phase I). Twenty more lots were scheduled to close 150 days after Phase I closing (Phase II). And 18 lots were scheduled to close 150 days after Phase II closing (Phase III).
[3] Over the 10 years it employed him, Pl paid Singh a total of $1,337,130 for his services, including $280,317 in 2001.
[4] W.R.P. Lake Union Ltd. v. Exterior Servs., Inc., 85 Wash.App. 744, 752, 934 P.2d 722 (1997).
[5] Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc., 115 Wash.App. 384, 394, 62 P.3d 548 (2003).
[6] Id.
[7] Dean v. McFarland, 81 Wash.2d 215, 219-20, 500 P.2d 1244 (1972).
[8] TPST Soil Recyclers of Wash., Inc. v. W.F. Anderson Const., Inc., 91 Wash.App. 297, 301, 957 P.2d 265 (1998).
[9] Intermountain Elec., 115 Wash.App. at 384, 62 P.3d 548.
[10] Schumacher v. Williams, 107 Wash.App. 793, 799, 28 P.3d 792 (2001), review denied, 145 Wash.2d 1025, 41 P.3d 484 (2002).
[11] New Castle Invs. v. City of LaCenter, 98 Wash. App. 224, 229, 989 P.2d 569 (1999) (citing People's Org. for Wash. Energy Res. v. Wash. Utils. & Transp. Comm'n, 104 Wash.2d 798, 825, 711 P.2d 319 (1985)), review denied, 140 Wash.2d 1019, 5 P.3d 9 (2000).
[12] Id. (citing Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813-14, 828 P.2d 549 (1992)).
[13] Id.
[14] RCW 60.04.011(4).
[15] RCW 60.04.011(7).
[16] RCW 60.04.011(15).
[17] RCW 60.04.011(5)(a).
[18] RCW 60.04.011(7) (emphasis added).
[19] 30 Wash.2d 622, 193 P.2d 321 (1948).
[20] Id. at 626, 193 P.2d 321.
[21] Id. at 629-30, 193 P.2d 321.
[22] Id. at 626, 193 P.2d 321.
[23] Id. at 629, 193 P.2d 321.
[24] Intermountain Elec., 115 Wash.App. at 394, 62 P.3d 548.
[25] W.R.P., 85 Wash.App. at 750, 934 P.2d 722.
[26] Structurals N.W., Ltd. v. Fifth & Park Place, Inc., 33 Wash.App. 710, 715, 658 P.2d 679 (1983); CHG Int'l, Inc. v. Platt Elec. Supply, Inc., 23 Wash.App. 425, 426, 597 P.2d 412 (1979).
[27] W.R.P., 85 Wash.App. at 753, 934 P.2d 722 ("the statute's implicit requirement that the trial court make ... factual [findings] does not turn [the] summary proceeding into a substitute for a trial on the merits when the facts do not clearly indicate the lien is frivolous and without reasonable cause or is excessive.").
[28] Because the lien is neither frivolous nor excessive, Singh is entitled to attorney fees by statute. Under RCW 60.04.081(4), "[i]f the court determines that the lien is not frivolous and was made with reasonable cause, and is not clearly excessive, the court shall issue an order so stating and awarding costs and reasonable attorneys' fees to the lien claimant to be paid by the applicant."
[29] Perry v. Hamilton, 51 Wash.App. 936, 938, 756 P.2d 150, review denied, 111 Wash.2d 1017 (1988).
[30] State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998).