[No. 30851. Department One. August 12, 1949.]

FRANK W. RADLEY, *Appellant*, v. DON RAYMOND *et al.*, *Respondents.*[1]

[1]Reported in 209 P. (2d) 305.

*Frank W. Radley* and *Frank M. Allyn,* for appellant.

HILL, J.—The controversy in this case revolves about the placing of a rebuilt motor in the appellant's automobile; at its periphery it touches on OPA ceiling prices, possessory lien rights, and various and sundry other legal principles. The essential facts, apart from the complexities of OPA regulations, are relatively simple.

About June 26, 1945, the appellant left his automobile, a family car used to some extent for business purposes, at the repair garage of respondent Don Raymond. (Despite the caption, Raymond is the only respondent; and he has made no appearance in this court.) The trial court found, and we adopt its finding, that it was agreed between respondent and appellant that a rebuilt motor was to be installed in the car at a cost to appellant of one hundred twenty-five dollars, respondent taking appellant's then inoperative motor in exchange. (Other miscellaneous repairs were also made to the car; these, appellant insisted throughout the ensuing controversy, were, with minor exceptions, made without authority. However, at the trial, appellant conceded his liability for these repairs.)

The trial court also found that, about September 5, 1945, the respondent advised the appellant that the work on his car had been completed, and delivered to him a detailed invoice and statement in the sum of $240.16. (The statement was actually for $240.24, but the trial court throughout its findings used the figure $240.16, to which no objection was made. We adopt that figure so that our computations will be on the same basis as those of the trial court.) The items pertinent to the rebuilt motor and its installation aggregated $173.52, or $48.52 in excess of the agreed price.

The appellant refused to pay the sum of $240.16, and the respondent refused to surrender possession of the car.

The appellant, in an effort to get the respondent to release the car, made at least two and possibly three offers:

one, to pay $190 to the clerk of the court, to be paid to the respondent provided it was found that that amount did not exceed the OPA ceiling price, and provided that, after examination and testing, it appeared that a properly rebuilt motor had been installed and that the other parts charged for had been put in the car; two, to pay $341 (the maximum OPA price at which the car could be sold) to the clerk of the court, that sum to be held to satisfy any legitimate claim that the respondent might have, and, to quote the original complaint,

". . . for the further purpose of having said car delivered into the possession of plaintiff . . . for a sufficient time to give him an opportunity to test it out . . . and to fully demonstrate just what the condition of said car is at this time."

The third offer, if it was made, was $180 or $190, possibly without condition, or it may have been conditioned on an examination and approval of the car by a mechanic designated by the appellant.

The respondent refused the offers and continued to hold the car for the amount of the bill, $240.16.

On October 25, 1945, the appellant commenced his action to recover possession of the car and for various items of damage.

The respondent retained possession of the car until May 15, 1946, when the appellant secured possession by virtue of a writ of replevin. After the appellant had driven the repossessed car two hundred miles, an oil pump installed by the respondent proved to be defective, and repairs totaling $63 had to be made.

On February 27, 1948, the cause came on for trial on appellant's third amended complaint. Of appellant's eight separate claims for damages, he was denied relief on all except one, i.e., the item of $63 for repairs made necessary by the defective oil pump.

The respondent cross-complained and asked for a foreclosure of his chattel lien, which had been filed on January 28, 1946. Rem. Rev. Stat., § 1154 [P.P.C. § 172-1] et seq.

The trial court, as we have previously indicated, found there had been an overcharge of $48.52 on the rebuilt motor and its installation. Deducting that amount from $240.16, the trial court found that as of September 5, 1945, the appellant was indebted to the respondent in the amount of $191.64. The court also set off the $63 damages occasioned by the defective oil pump, and gave the respondent a judgment for $128.64 and a $50 attorney's fee, found them to be a lien on the appellant's car, and directed the foreclosure of the lien.

The appellant appeals from so much of the judgment as awards the respondent a lien, from the refusal to grant him (the appellant) treble damages for an overcharge in violation of OPA regulations, and from the refusal to grant him damages for the wrongful detention of his car.

The two major questions presented are:

(1) Did the appellant establish a violation of the OPA ceiling price for the rebuilt motor, and his right to three times the amount of the overcharge?

(2) Did the respondent lose his lien? On the answer to this question depends the appellant's right to damages for retention of his car by the respondent, and also the respondent's right to have a lien foreclosure and an attorney's fee of fifty dollars.

The fact that the trial court was obliged to take judicial notice of the emergency price control act of 1942, as amended, and the myriad regulations issued thereunder and included in the Federal Register, did not relieve the appellant of the responsibility of establishing the ceiling price applicable to this particular transaction, which did not appear in the Federal Register. This he attempted to do by two letters written to him, one purportedly signed by C. R. Williams and the other by Allan R. Moseley, both OPA automotive price specialists. One stated that the transaction was the sale of a used part; the other, that it was a sale of a rebuilt motor on an exchange basis. There was no proof that either of the men was an OPA automotive price specialist, or that the signatures on the letters were authentic.

In *Winslow Bros. & Smith Co. v. Hillsborough Mills,* 319 Mass. 137, 65 N. E. (2d) 1, the trial judge had ruled that letters addressed to one of the parties from various regional price officers and attorneys, which letters were (as here) by no means consistent or uniform, were not conclusive or binding upon the court. The appellate court said:

"This ruling was right. Whatever may be the effect of formal and published interpretations, by the administrator of the OPA, of regulations promulgated by him [citing cases], those here fell far short of that. They amounted to nothing more than the informal opinions of subordinate officials, rendered to one of the parties after the controversy in question arose. [Citing cases.]"

We are in accord with the trial court in its finding that the appellant "failed to sustain the burden of proving the price ceiling applicable to the transaction of the parties" as established by the Office of Price Administration.

■ The appellant says that, if he failed to establish the ceiling price at the trial, he should be given an opportunity to do so in a new trial, because since the trial he has been able to locate Mr. Allan R. Moseley, one of the automotive price specialists, who wrote one of the letters relied upon to establish ceiling prices, and that he had been unable to locate Mr. Moseley at an earlier date by reason of the closing of the OPA office in Seattle and the dispersal of the officers connected therewith.

The answer is that the granting of a new trial is largely a matter of the trial court's discretion. Here we have an action commenced in October of 1945, tried in February of 1948, and then continued to April of 1948 to give the appellant an opportunity to secure additional testimony. The memorandum decision was filed on June 17, 1948, and the motion for a new trial was filed on August 30, 1948. The appellant knew, at least from the time he prepared his amended complaint, February 11, 1946, that he would have to prove his allegations as to ceiling price. His letter from Mr. Moseley was dated May 6, 1946, and the appellant could have taken Mr. Moseley's deposition if he had desired. The trial court may well have felt that there was a lack of

diligence in securing the testimony of Mr. Moseley. Cases with a fact pattern somewhat similar to the present situation are *Schoening v. Young*, 55 Wash. 90, 92, 104 Pac. 132; *Spokane Portland Cement Co. v. Larson*, 71 Wash. 301, 306, 128 Pac. 641; and *Steffen v. Walton*, 168 Wash. 521, 526, 12 P. (2d) 927.

The trial court said, apropos of another matter in its memorandum decision:

"It is thus apparent that these parties reached their original impasse over the sum of $48.52, which resulted in the institution of two law suits, numerous court appearances to determine the issues, and the cost of a several days' trial of the issues."

The trial court apparently thought that such litigation must end some time, and we feel that the trial court did not abuse its discretion in refusing to grant a new trial or to reopen the case to take additional testimony.

With the OPA issue out of the case, there remains for consideration the question of whether the respondent has lost the lien for the $191.64 found to be due him on September 5, 1945.

If the appellant made any unconditional tender, it was less than the amount due, and none of his conditional offers to pay money to the clerk of the court, with various strings and conditions attached, constituted a tender of the amount due. If the respondent lost his lien, it was not because of any tender made by the appellant, but because the respondent in bad faith included the $48.52 overcharge in his lien claim.

No mistake or error in the statement of a claim of lien will invalidate it unless the court finds that such mistake or error was made with intent to defraud or in bad faith. *Westinghouse Electric Supply Co. v. Hawthorne*, 21 Wn. (2d) 74, 84, 150 P. (2d) 55. We have held that liens have been lost because of the bad faith of the lienor in claiming a lien for items to which he knew he was not entitled. *Robinson v. Brooks*, 31 Wash. 60, 71 Pac. 271; *Knibb v. Mortensen*, 89 Wash. 595, 154 Pac. 1109. In neither of

these cases was the lien involved a possessory chattel lien. In the latter case, it was said: "These lien laws tend to burden the sale of property. They must be claimed in good faith." In possessory lien cases, the necessity of good faith on the part of the lienor is even more important, for the lienor is not only burdening the sale of property, but is depriving the owner of the possession and use of his property.

The determinative question is: Was the overcharge made with an intent to defraud or in bad faith? That particular question may not have been argued to the trial court, as the court does not discuss it and makes no findings on it. The only consideration of the validity of the lien in the memorandum decision centered around the question of whether a proper tender was ever made, and we are in entire accord with the conclusion reached by the trial court relative to the inadequacy of the appellant's tenders to terminate the lien.

█ The evidence to establish bad faith should be clear, cogent, and convincing. If we start with the trial court's finding that there was a contract between the parties whereby the respondent was to install a rebuilt motor for one hundred twenty-five dollars and take the appellant's motor in exchange (and the respondent does not appeal from or challenge that finding), and that the respondent made a charge of $173.52 for that particular work, the overcharge in itself is evidence of bad faith.

If there is a contract price, the lienor must know it, and an overcharge raises a strong inference that the lienor is using his right to withhold possession from the owner as a method of extorting more than the contract price.

We do not hold that a demand for more than the contract price is conclusive evidence of bad faith, for there may be an explanation thereof consistent with good faith; but in the present case it is very persuasive. It does not stand alone, however. The respondent made false answers to certain written interrogatories propounded to him. One of these related to the value of the motor taken from the appellant's car, to which he replied that the old motor had no value; at

the trial he was compelled to admit that the old motor had a very substantial value. He also denied that the rebuilt motor placed in the appellant's car had been rebuilt by Baldwin Motors of Seattle, and the falsity of that denial was conclusively established.

The trial court concluded that any of the respondent's testimony which is not corroborated should have little, if any, weight. We are satisfied that the evidence of bad faith on his part is clear, cogent, and convincing. The court, in *Knibb v. Mortensen, supra*, might well have been speaking of the present situation when, in speaking of a lienor's overcharge, it said, "and, in our opinion, he did it wilfully out of an ill humor which is exhibited in sundry features of the record."

We therefore hold that the respondent lost his possessory lien because he had made an overcharge knowingly and in bad faith. He did not, however, lose the debt, and he was entitled to a judgment against the appellant in the amount found by the trial court, *i.e.*, $128.64, but not to the attorney's fee of fifty dollars for foreclosing the lien.

If the respondent did not have a lien on the appellant's car, his possession of it from September 5, 1945, to. May 15, 1946, was wrongful, and the appellant is entitled to recover the value of the use of the car during the time he was deprived of it. *MacKenzie v. Steeves*, 98 Wash. 17, 167 Pac. 50; *Gaffney v. O'Leary*, 155 Wash. 171, 283 Pac. 1091; *Hoff v. Lester*, 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751; *Hoff v. Lester*, 31 Wn. (2d) 937, 200 P. (2d) 515.

The only evidence bearing upon this issue is the appellant's testimony that the value of the use of the car was three dollars a day. His recovery on this item would, in any event, be limited to the damages alleged in the third amended complaint, to wit, three hundred dollars.

In a somewhat similar case, Judge Beals pointed out that the owner of personal property has the obligation of mitigating his damages by availing himself of a provisional remedy, such as filing the claim and bond provided for such a purpose in a replevin action. He also made clear that the

damages must bear some reasonable relation to the value of the property. *Hoff v. Lester*, 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751. The A. L. R. notation following that case begins at p. 758 of 164 A. L. R. and is captioned, "Right of plaintiff in replevin to damages for detention of property during pendency of action as affected by his failure to claim immediate possession by complying with statutory provisions in that regard." The annotator refers to *Hoff v. Lester, supra,* as an excellent analysis of the question and a recognition of both the right to damages in such a case and the duty to mitigate them.

■ ■ We desire to call particular attention to law points 6 and 7 in *Hoff v. Lester,* appearing on pages 95 and 96 of 25 Wn. (2d). We approve and adopt those two points of law as part of our opinion in this case. See, also, *W. B. Moses & Sons v. Lockwood,* 295 Fed. 936, 33 A. L. R. 1467, and note at p. 1479 of 33 A. L. R. under the caption, "Duty to give bond and procure return of property in order to mitigate damages from its wrongful seizure under legal process." The car in the present case was not held under legal process, but the principles involved would be the same.

In *Johnston v. Karjala,* 172 Wash. 122, 19 P. (2d) 948, 90 A. L. R. 967, and *Hoff v. Lester,* 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751, we remanded similar cases to the trial court for the purpose of having the amount of damages determined. The trial court in the present case has not passed upon this issue, because it held the lien valid and the possession by appellant proper, and we might well follow the procedure adopted in the *Johnston* and *Hoff* cases. However, the amount involved does not warrant further litigation and the possibility of another appeal to this court, and we are therefore disposing of the case on the record made, as the issue was tendered and should be decided.

■ The question of the possible financial inability of the owner of the property to maintain a replevin action or secure a replevin bond, suggested as the reason for remanding the case of *Hoff v. Lester, supra,* for further proceedings,

is eliminated here, as the action waged and the offers made by the appellant established that there was never any question as to his ability to secure a replevin bond. We think he should have done so and thus mitigated his damages, within fifteen or twenty days, at most. At three dollars a day, his damages would then have totaled forty-five to sixty dollars. His expenses in connection with this mitigation of damages would not have exceeded fifty dollars. We will, therefore, allow the appellant one hundred dollars as damages for the wrongful detention of his property by the respondent; in view of the value of the property, we regard this as ample. This amount will be offset against the respondent's judgment of $128.46, reducing that judgment to $28.46, without costs.

The judgment is affirmed in part and reversed in part; and the cause is remanded to the trial court with instructions to make findings and conclusions and enter a judgment consistent herewith. The appellant will recover his costs on this appeal.

JEFFERS, BEALS, STEINERT, and MALLERY, JJ., concur.