206 P.3d 689 (2009)
S.D. DEACON CORPORATION OF WASHINGTON, a Washington corporation, Respondent,
v.
GASTON BROTHERS EXCAVATING, INC., a Washington corporation, Appellant.
No. 61702-8-I.
Court of Appeals of Washington, Division 1.
May 11, 2009.
*691 Sage Andrew Linn, Linville Law Firm PLLC, Seattle, WA, for Appellant.
John Todd Henry, Peter Noel Ralston, Oles Morrison Rinker & Baker LLP, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 Trial courts should take care not to let the frivolous lien statute be misused to deprive contractors of their right to a trial on a lien claim. The summary release of a lien under RCW 60.04.081 is not to occur unless the lien is so devoid of merit that the claim has no possibility of succeeding. This appeal involves an ordinary contract dispute with factual issues that should not have been decided on affidavits. We reverse and remand for reinstatement of the lien.
¶ 2 A lien is an encumbrance on property to secure payment of a debt. Kinne v. Kinne, 27 Wash.App. 158, 161, 617 P.2d 442 (1980). A contractor has a lien upon an improvement of real property for the contract price of labor and materials furnished:
any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner.
RCW 60.04.021. The term "contract price" means "the amount agreed upon by the contracting parties, or if no amount is agreed upon, then the customary and reasonable charge therefor." RCW 60.04.011(2).
¶ 3 The lien procedure can be abused by persons who desire to encumber someone else's real property improvement without any real basis for doing so. The legislature has created a summary proceeding to enable courts to remove frivolous liens quickly:
Any owner of real property subject to a recorded claim of lien under this chapter, or contractor ... who believes the claim of lien to be frivolous and made without reasonable cause, or clearly excessive may apply by motion to the superior court ... for an order directing the lien claimant to appear before the court ... and show cause, if any he or she has, why the relief requested should not be granted.
RCW 60.04.081(1). We have held that the legislature intended to allow a resolution of factual disputes in this summary proceeding. W.R.P. Lake Union Ltd. Partnership v. Exterior Services, Inc., 85 Wash.App. 744, 750, 934 P.2d 722 (1997). But the summary resolution of factual disputes must be confined to the limited group of cases where the lien claim is clearly meritless. The summary procedure provided by the statute is not to be used as a substitute for trial where there is a legitimate dispute about the amount of work done and money paid. Williams v. Athletic Field, Inc., 142 Wash.App. 753, 765 n. 5, 139 P.3d 426 (2006). "Nowhere in the statute does the legislature give the trial court authority to expand this summary proceeding into a suit to foreclose the lien or to recover on a contractual theory." Andries v. Covey, 128 Wash.App. 546, 550, 113 P.3d 483 (2005).
¶ 4 The lien claimant bears the ultimate burden of proof when it seeks to enforce the lien. But in a summary proceeding under the frivolous lien statute, the party seeking release of the lien must establish beyond legitimate dispute that the lien was improperly filed. W.R.P., 85 Wash.App. At 752, 934 P.2d 722. Every frivolous lien is invalid, but not every invalid lien is frivolous. Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc., 115 Wash.App. 384, 394, 62 P.3d 548 (2003).
¶ 5 The lien at issue in this case was recorded by appellant Gaston Brothers Excavating, Inc. against a property in north Seattle because of a debt allegedly owed by general contractor S.D. Deacon Corporation of Washington. Deacon contracted with Gaston to prepare the ground for a fitness center in north Seattle. After Gaston worked for several months, a dispute arose about the contract price.
¶ 6 Gaston submitted a first bid proposal on April 13, 2007. This bid was for $49,000 *692 for work described as "footings for LA Fitness, swimming pool and depressed slabs." Gaston submitted a second bid on April 16 for work described as "Capillary Break", a moisture barrier. This bid set forth three price options: "Pea Gravel" at $78,000, "Type 22 (5/8" crushed)" at $73,000 or "Crushed Glass (5/8") at $63,000.
¶ 7 Deacon sent Gaston a letter on May 18 agreeing to award a subcontract in the amount of $112,000.00. Gaston began work. On June 14, Gaston submitted an application for a progress payment reciting that of the total contract amount of $112,000, 44 percent of the work had been completed. This amounted to a $49,000 charge. After subtracting 10 percent for retention, Gaston requested payment of $44,100. Gaston's invoice for $44,100 bore the notation "1st Phase" and recited that it was for June 1 through June 30 for "Footings For LA Fitness, swimming pool and depressed slabs."
¶ 8 On July 13, 2007, Deacon sent Gaston a lengthy subcontract agreement. The agreement stated that Gaston's bid was for a total of $63,000:
This Subcontractor's proposal includes labor, materials, equipment, insurances and taxes per the following breakdown: (Note: this breakdown is for accounting purposes only)

 Base Bid $49,000.00
 Capillary Break Crushed Glass 5/8" $14,000.00
 __________
 Total $63,000.00

The agreement also contained an integration clause representing that it was the entire agreement between Deacon and Gaston with respect to the fitness project.
¶ 9 On July 19, Deacon sent Gaston a change order. The order recited that the contract amount of $63,000 was changed by agreement to $63,991.75 to include an additional $991.75 for earthwork and utilities. Gary Gaston signed the change order on July 24.
¶ 10 On August 3, Deacon sent Gaston a check for $44,100 in response to Gaston's June invoice. The check was attached to a statement reciting that the payment was for work done in June. On October 5, Deacon sent Gaston a check for $10,000 attached to a statement reciting that it was for work done in July.
¶ 11 Deacon refused to pay more. Deacon maintained that there was one integrated contract for the entire project, including the capillary break work as well as the footings, for a total contract price of $63,991.75. Gaston believed there were two separate subcontracts totaling $112,000, the first for the footings and the second for the capillary break. On October 11, Gaston recorded a claim of lien in the amount of $43,191.75. Deacon reacted on October 17 with a "unilateral deductive change order" for $9,891.75, reducing the contract price to $54,100. This was precisely the amount it had paid Gaston to that date.
¶ 12 Deacon filed a motion and supporting affidavits for summary removal of the lien under RCW 60.04.081. Deacon contended that the lien was frivolous because the entire amount due to Gaston had already been paid in full. Deacon explained the reference to $112,000 in the May 18 letter as a scrivener's error. Gaston responded that there were two separate accepted bids totaling $112,000. According to Gaston the July agreement for $63,000 covered only the capillary fill work.
¶ 13 The trial court granted Deacon's motion, denied Gaston's subsequent motion to reconsider, and awarded Deacon attorney fees. The court found the agreement regarding both the April 13 and April 16 bid proposals was encompassed in the integrated July 5 written subcontract agreement for a contract amount of $63,000. The court found that the change orders had adjusted the contract amount down to $54,100 and Gaston had fully paid the amount due. The court concluded the lien was frivolous and made without reasonable cause.
¶ 14 The trial court's reasoning cannot be sustained. Most important, it was disputed whether the July 5 agreement was intended by the parties to cover all of Gaston's work on the fitness center. It is a question of fact whether the parties to a written agreement intend an integrated contract. Emrich v. Connell, 105 Wash.2d 551, 556, 716 P.2d 863 (1986). While boilerplate integration clauses can provide strong evidence of integration, they are not operative if *693 they are premised on incorrect statements of fact. Denny's Rests. v. Sec. Union Title Ins. Co., 71 Wash.App. 194, 203, 859 P.2d 619 (1993). A court may consider evidence of negotiations and circumstances surrounding the formation of the contract, and if the agreement is not completely integrated, additional terms may be proved to the extent they are consistent with the written terms. Denny's, 71 Wash.App. at 202, 859 P.2d 619; Emrich, 105 Wash.2d at 556, 716 P.2d 863.
¶ 15 Declarations by Gary Gaston and his agent explained that the April 13 bid for $49,000 was for the footings, while the April 16 bid presented three price options ranging from $63,000 to $78,000 for the capillary fill work. Noticeably absent from Deacon's materials is any declaration from Jason Metcalf, the person Gaston identified as Deacon's agent who requested that Gaston provide the second, separate bid for the capillary fill work.
¶ 16 Gaston said that when he signed the July subcontract agreement, he believed the stated price of $63,000 applied only to the capillary work because by then all phase one work on footings was complete and Gaston Brothers had already submitted its invoice for the phase one work. His belief is supported by the plain language of the April bid proposals describing separate work, the June 14 letter referring to a total amount of $112,000, and the fact that, in August, after the July agreement was signed, Deacon paid without reservation or complaint Gaston's June invoice reciting the $112,000 amount.
¶ 17 Deacon claims that the April 16 proposal was merely a revised version of the April 13 proposal. The record does not support this claim. The printed version of the April 16 bid does not mention the specific work described in the April 13 bid. While the version of the April 16 bid that Deacon provided to the trial court contained additional handwritten comments that might support Deacon's interpretation, these appear to have been added by Deacon's personnel after they received the printed bid from Gaston. Moreover, nothing in any of Deacon's materials rebuts Gaston's declaration that the phase two capillary break work cost more in materials and equipment alone than the $14,000 that Deacon claimed was the agreed amount.
¶ 18 Deacon relies heavily on the language in the July agreement breaking down the amount of $63,000 into a base bid of $49,000 and an additional $14,000 for a capillary break of crushed glass. But Deacon's materials submitted to the trial court do not account for the reservation, emphasized by italic type, that "this breakdown is for accounting purposes only." Deacon also relies on the fact that Gaston initialed the July change order referring to the $63,000 figure. But if Gaston reasonably understood that the $49,000 bid on April 13 was for separate work, then he would have had no reason to object to a statement referring to the April 16 bid as for $63,000.
¶ 19 There are other issues undermining the court's finding that Deacon paid Gaston in full for all of its work on the project. These include how to account for the 10 percent retention that Gaston claims is still due. And there are no invoices, bills, or other documents explaining why Deacon's final unilateral change order happened to be for the precise figure that caused their final obligation to Gaston to be exactly zero.
¶ 20 Deacon argues that the trial court's decision must be upheld because the facts found by the court are supported by substantial evidence. See W.R.P., 85 Wash. App. at 750, 934 P.2d 722. Deacon emphasizes the holding in W.R.P. that a trial court may properly resolve disputed facts in a summary lien proceeding. But W.R.P. also held that such a proceeding should not become a trial on the merits. As the Williams court observed, there is a certain amount of tension inherent in these two holdings. Williams, 142 Wash.App. at 765 n. 5, 139 P.3d 426. As Williams shows, the more complex the underlying contractual relationship, the less appropriate will it be to conclude that a particular lien filing is frivolous. The kind of factual disputes that the trial court could properly resolve might be, for example, whether the lien was signed by a proper party, whether it was properly served, and whether its contents comply with the statutory requirements. Williams, 142 Wash.App. at 765 n. 5, 139 P.3d 426.
¶ 21 Here there is no dispute that the parties had an agreement and that *694 Gaston performed work. The only dispute concerns the amount owed. The central issue is whether the parties intended the July agreement to be fully integrated. This is not the type of dispute that can be resolved in a summary proceeding by making findings of the sort that would be entered after a trial. Each side had evidence supporting its position. It is not dispositive that there was evidence to support the court's finding that the contract was integrated. Lacking are any findings supporting the conclusion that the lien was invalid beyond legitimate dispute. The determination to be made when a lien claim is alleged to be frivolous is analogous to deciding whether an appeal is frivolous; the claim of lien must present no debatable issues and it must be so devoid of merit that no possibility of sustaining the lien exists. W.R.P., 85 Wash.App. at 752, 934 P.2d 722. Before declaring a lien to be frivolous and removing it in a summary proceeding, the court must make specific findings establishing that the lien is so meritless as to justify depriving the claimant of the opportunity to present live testimony and cross-examine witnesses.
¶ 22 It was error to conclude that Gaston's lien was frivolous and made without reasonable cause. The order lifting the lien must be reversed.
¶ 23 The trial court's award of fees to Deacon is also reversed. "If the court determines that the lien is not frivolous and was made with reasonable cause, and is not clearly excessive, the court shall issue an order so stating and awarding costs and reasonable attorneys' fees to the lien claimant to be paid by the applicant." RCW 60.04.081(4). On remand, the trial court shall award fees to Gaston for the earlier proceedings in that court. Gaston is awarded costs and reasonable attorneys' fees for this appeal, subject to compliance with RAP 18.1.
¶ 24 Reversed and remanded for further proceedings.
WE CONCUR: DWYER, A.C.J., and GROSSE, J.