FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 FEB 11 AM 9:18



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| DENISE BRACKETT WOODLEY, | ) | No. 77352-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STYLE CORPORATION doing | ) | |
| business as SERVPRO OF | ) | |
| SHORELINE/WOODINVILLE, | ) | PUBLISHED OPINION |
| lien claimant, | ) | |
| | ) | FILED: February 11, 2019 |
| Appellant. | ) | |

VERELLEN, J. — A materialmen's lien must be released pursuant to RCW 60.04.081 if it is frivolous and made without reasonable cause. Because Style Corporation's (Servpro) lien presents debatable issues of law and fact, it is not frivolous and should not have been released.

A lien is clearly excessive under RCW 60.04.081 when the amount claimed on the face of the lien is unquestionably far greater than the usual or agreed amount. Because Servpro's lien clouds the title to Denise Brackett Woodley's condominium unit for the entire $183,945.09 listed on its face for services provided to Woodley worth, at most, $6,001.90, the trial court correctly concluded the lien was clearly excessive.

Therefore, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

FACTS

Denise Brackett Woodley owns unit 208 in building E of the Bellevue Park condominium complex. Because of ongoing roof construction and a rainstorm, water leaked into Woodley's unit and 19 others on September 17, 2016.[1] That day, Bellevue Park's property management company, MacPherson's Property Management, called Servpro and asked it to clean up the water and conduct restoration work. MacPherson's signed a work authorization contract with Servpro on the behalf of "Bellevue Park Condos," and Servpro began placing drying equipment in affected units.

Woodley's unit was occupied by a tenant who gave Servpro permission to enter and set up its equipment. Interior surfaces in the unit's living room, dining room, bedrooms, and bathroom needed to be dried. Three days later, Servpro returned to monitor drying progress and to perform asbestos testing.

Woodley did not speak with Servpro or her tenant prior to the work completed between September 17 and September 20. Servpro's equipment remained in Woodley's unit until mid-November.

The Bellevue Park condominium owners association planned to pay Servpro for its services and recoup the money from unit owners via a special

---

[1] The entire condominium complex consists of 78 units across multiple buildings.

2

assessment. But the association failed to pay because it was trying unsuccessfully to obtain the money from the roofing company.

Servpro filed a single lien for the total value of its services on January 26, 2017. The lien claimed a debt of $183,945.09. The lien named the association as the indebted person but recited that it applied to the 20 specific units and a common storage area where Servpro provided services. The lien also names each owner of the 20 units but does not allocate a specific portion of the total debt to each unit.

Pursuant to RCW 60.04.081, Woodley filed a motion to release the lien. Finding it both frivolous and clearly excessive, the court released the lien. The court denied a motion for reconsideration.

Servpro appeals.

ANALYSIS

When evaluating release or reduction of a lien under RCW 60.04.081, we review the court's legal conclusions de novo and review factual findings for substantial evidence.[2]

A materialmen's lien is authorized for "any person furnishing labor, professional services, materials, or equipment for the improvement of real property . . . for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction

---

[2] Intermountain Elec., Inc. v. G-A-T Bros. Const., Inc., 115 Wn. App. 384, 390, 62 P.3d 548 (2003) (citing W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc., 85 Wn. App. 744, 749-50, 934 P.2d 722 (1997)).

agent of the owner."[3] After a claimant files a lien, RCW 60.04.081 authorizes a "narrow and limited"[4] "summary proceeding" to determine whether the lien "'is frivolous and made without reasonable cause or clearly excessive.'"[5] A court must release the lien "if frivolous and made without reasonable cause" or reduce the lien if "clearly excessive."[6] This "trial by affidavit" should not be a substitute for trial on the merits where the facts "do not clearly indicate" the lien is frivolous or clearly excessive.[7]

<u>Servpro's Lien Is Not Frivolous</u>

A lien is frivolous if "improperly filed beyond legitimate dispute" and "so devoid of merit that it has no possibility of succeeding."[8] Even if a lien is invalid, it may not be frivolous.[9] This high standard exists to ensure contractors and laborers are not deprived of their right to trial on a legitimate lien claim.[10] Thus, a lien is not frivolous if it presents debatable issues of law and fact.[11]

---

[3] RCW 60.04.021.

[4] <u>Andries v. Covey</u>, 128 Wn. App. 546, 551, 113 P.3d 483 (2005).

[5] <u>Williams v. Athletic Field, Inc.</u>, 172 Wn.2d 683, 699, 261 P.3d 109 (2011) (quoting <u>W.R.P.</u>, 85 Wn. App. at 749); RCW 60.04.081.

[6] RCW 60.04.081(4).

[7] <u>W.R.P.</u>, 85 Wn. App. at 750, 753.

[8] <u>Williams</u>, 172 Wn.2d at 699 (internal quotation marks omitted) (quoting <u>Intermountain Elec.</u>, 115 Wn. App. at 394).

[9] <u>S.D. Deacon Corp. of Wash. v. Gaston Bros. Excavating, Inc.</u>, 150 Wn. App. 87, 91, 206 P.3d 689 (2009).

[10] <u>Id.</u> at 89.

[11] <u>See</u> <u>W.R.P.</u>, 85 Wn. App. at 752 ("Because this lien presents debatable issues of law and fact, it does not satisfy the requirements of frivolous and without reasonable cause justifying its release in this summary procedure.").

Woodley makes several arguments to explain why Servpro's lien is frivolous, but none meet this high standard.

First, Woodley argues Servpro's lien is frivolous because she never directly authorized any of Servpro's work after September 26, 2016. Servpro agrees that Woodley herself never directly authorized its services. But Woodley's brief does not contest, and she confirmed at oral argument that she views the association as having actual authority under the condominium declaration for three days following the roof leak to arrange for Servpro's emergency repairs to her unit. Woodley's admission creates debatable issues of law and fact around the scope of agency authorized by the condominium declaration.[12]

Second, Woodley contends the lien is frivolous because it was filed after the 90-day statutory limitations period lapsed. The court found Servpro stopped providing beneficial services to Woodley on September 21, 2016, and filed its lien more than 90 days later on January 26, 2017. Servpro argues the limitations period did not lapse before filing because it continued to provide beneficial services to Woodley through November 17, 2016, when it removed its equipment from her unit. But even though an untimely lien is presumptively invalid, that does not mean the lien is frivolous.

_____

[12] See RCW 60.04.021. However, Servpro's lien would have been frivolous had there been no agency relationship at all between Woodley and the association because none of Servpro's work would have been furnished "at the instance of the owner." RCW 60.04.021.

A materialmen's lien must be filed "not later than [90] days" after the lien claimant stops providing services.[13] This "strict time limit"[14] is "a period of limitation," so "no action to foreclose a lien shall be maintained" if the claimant failed to file within the limitations period.[15] A lien filed after the 90-day limit is presumptively invalid.[16] Any provision of supplies or services at the owner's request extends the limitation period for another 90 days.[17]

In Intermountain Electric, Inc. v. G-A-T Brothers Construction, Inc., a lien was invalid because it was filed 94 days after the lien claimant, an electrician, stopped providing beneficial services to a general contractor.[18] On June 6, 2000, the electrician performed its last active work for the contractor and left its construction trailer at the construction site in anticipation of future work.[19] The electrician filed a lien 94 days later but argued its lien was valid because it was still furnishing equipment to the general contractor at the time it filed.[20] Because

---

[13] RCW 60.04.091.

[14] Inland Empire Dry Wall Supply Co. v. W. Sur. Co., 189 Wn.2d 840, 844, 408 P.3d 691 (2018).

[15] RCW 60.04.091.

[16] RCW 60.04.091; see Intermountain Elec., 115 Wn. App. at 391 ("Intermountain's last day of work was June 6, 2000. The lien was filed 94 days later on September 8. The lien is, then, invalid on its face.")

[17] See Intermountain Elec., 115 Wn. App. at 393 ("Even small quantities of additional supplies, if furnished *at the request of the owner to complete the contract* will serve to keep the 90-day lien limitation period from starting.").

[18] 115 Wn. App. 384, 391-92, 62 P.3d 548 (2003).

[19] Id. at 389.

[20] Id. at 390.

6

the general contractor neither requested nor required the electrician's construction trailer, the electrician stopped providing beneficial services on June 6 and did not have a valid lien.[21] But the court declined to hold the lien frivolous, despite it being invalid because it presented debatable issues of law and fact.[22]

Like the electrician in <u>Intermountain Electric</u>, Servpro stopped providing beneficial services to Woodley well before it retrieved its equipment.[23] But without more, the lien is not frivolous even accepting it was invalidly filed more than 90 days after Servpro concluded beneficial work.

Third, Woodley contends the lien was frivolous because the contract between MacPherson's and Servpro did not state the actual amount charged. Authorized liens are only for "the contract price" of what the claimant provided.[24]

---

[21] <u>Id.</u> at 393.

[22] <u>Id.</u> at 394.

[23] Servpro explains that its services were still necessary from September into November based on its own moisture readings and its contract with MacPherson's. But this argument presumes a party to a Servpro contract has no power to refuse ongoing services, even if unwanted. Servpro's employees knew someone repeatedly unplugged their equipment. And within one week of the leak, Woodley told MacPherson's to tell Servpro to remove their equipment from her unit. Woodley's demand revoked the authority for MacPherson's or the Association to authorize additional work. <u>See</u> <u>CKP, Inc. v. GRS Const. Co.</u>, 63 Wn. App. 601, 608, 821 P.2d 63 (1991) ("Whether one is the agent of another for a specific purpose depends in part upon whether that person has power to act with reference to that purpose."); <u>see also</u> RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (AM. LAW. INST. 2006) ("As defined by the common law, the concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."). Servpro provides no authority that it was entitled to insist on unwanted services

[24] RCW 60.04.021.

But RCW 60.04.011(2) defines "contract price" as "the amount agreed upon by the contracting parties, or if no amount is agreed upon, then the customary and reasonable charge therefor." An authorized lien does not require a specific agreed-upon contract price before a claimant begins work.

Finally, Woodley contends the lien is frivolous because it contains factual inaccuracies, one inaccuracy being that Servpro's work was "ongoing" when it filed the lien.[25] The other is that the association owned the properties listed on the lien. These inaccuracies may be material to the ultimate validity of the lien, but they do not automatically make it frivolous.[26]

Because Servpro's lien presents debatable issues of law and fact, it is not frivolous.

Servpro's Lien Is Clearly Excessive

Servpro argues that its lien was not clearly excessive because it did not file it in bad faith or with an intent to defraud. Servpro cites to Pacific Industries, Inc. v. Singh for the proposition that "[a] materialman's lien will be declared invalid because it is excessive only if the amount is claimed with an intent to defraud or in bad faith."[27] But this standard relies on cases that predate RCW 60.04.081 and consequently, fail to account for the statute.

---

[25] Resp't's Br. at 21.

[26] See S.D. Deacon, 150 Wn. App. at 91 (stating that a lien must have been "improperly filed" "beyond legitimate dispute" for it to be held frivolous). Inaccuracies and misrepresentations on the face of the lien may be sufficient in circumstances not present here to show that the lien has been improperly filed beyond legitimate dispute.

[27] 120 Wn. App. 1, 10, 86 P.3d 778 (2003).

In Knibb v. Mortensen, our Supreme Court noted that liens "must be claimed in good faith" and that "willful excess would vitiate the whole lien" regardless of evidence of bad intent.[28] The court released the lien because the claimant "burdened a little dwelling with twice as much [debt] as he had a right to claim by lien, and, in our opinion, he did it willfully, out of an ill humor which is exhibited in sundry features of the record."[29]

In Radley v. Raymond, the court considered whether a mechanic lost his lien by overcharging a customer for a rebuilt engine.[30] An overcharge could lead to release of the lien if "the court finds that such mistake or error [on the face of the lien] was made with intent to defraud or in bad faith."[31] Bad faith could be demonstrated by a claimant "claiming a lien for items to which he knew he was not entitled."[32] Because the mechanic filed a lien for an amount almost 40 percent more than the contract price and failed to provide a good faith explanation for doing so, the court released the lien.[33]

More recently in CHG International, Inc. v. Platt Electric Supply, Inc., this court relied on Knibb and Radley to determine whether an electrical supply company lost its right to a materialmen's lien "by claiming an excessive

---

[28] 89 Wash. 595, 596, 154 P. 1109 (1916).

[29] Id.

[30] 34 Wn.2d 475, 477-79, 209 P.2d 305 (1949).

[31] Id. at 481.

[32] Id.

[33] Id. at 482-83.

amount."[34] In <u>CHG</u>, the trial court authorized foreclosure of a lien and entered a judgment for $25,000 of the $77,000 claimed on the face of the lien.[35] The debtor appealed and argued that the reduced judgment showed the lien should be released because the claimant overcharged for the services provided.[36] This court declined to release the lien because the evidence explained the overcharges without showing bad faith or fraudulent intent by the claimant.[37]

But these cases were decided before the legislature created the procedural mechanism in RCW 60.04.081 to release or reduce a lien. In 1991, the legislature repealed and replaced most of the materialmen's lien statute, and created the mechanism in RCW 60.04.081 to manage liens prior to foreclosure.[38] The prior version of the statute had no equivalent procedure.[39]

When interpreting a statute, we rely on the plain meaning of its terms to give effect to the intent of the legislature.[40] We determine legislative intent from the context of the statute and statutes related to it.[41] We do not engage in

---

[34] 23 Wn. App. 425, 426, 597 P.2d 412 (1979).

[35] <u>Id.</u>

[36] <u>Id.</u>

[37] <u>Id.</u> at 426-27.

[38] <u>See generally</u> LAWS OF 1991, ch. 281, § 8 .

[39] <u>Compare</u> LAWS OF 1991, ch. 281, § 8, <u>with</u> former ch. 60.04 RCW (1989).

[40] <u>Inland Empire</u>, 189 Wn.2d at 843 (quoting <u>Dep't of Ecology v. Campbell & Gwin, LLC</u>, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)); <u>W.R.P.</u>, 85 Wn. App. at 749.

[41] <u>Inland Empire</u>, 189 Wn.2d at 843 (quoting <u>Campbell & Gwinn</u>, 146 Wn.2d at 11, 12)).

10

statutory construction if its plain terms are unambiguous and will not produce an absurd result.[42] "We presume the [l]egislature is familiar with past judicial interpretations of its enactments."[43]

When the legislature enacted RCW 60.04.081, it created a distinct procedural mechanism to adjudicate a lien prior to foreclosure.[44] RCW 60.04.081(4) provides the remedies available to a property owner contesting a lien:

> If, following a hearing on the matter, the court determines that the lien is frivolous and made without reasonable cause, or clearly excessive, the court *shall* issue an order *releasing the lien if frivolous* and made without reasonable cause, *or reducing the lien if clearly excessive*, and awarding costs and reasonable attorneys' fees to the applicant to be paid by the lien claimant.[45]

The statute delineates between a "frivolous" lien and a "clearly excessive" lien by consistently separating the two with commas and the disjunctive "or."[46] In the limited summary proceeding authorized by RCW 60.04.081, the only remedy for a clearly excessive lien is reduction of the lien. Release is available only where a

---

[42] In re Dep. of D.L.B., 186 Wn.2d 103, 116, 376 P.3d 1099 (2016).

[43] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 789, 719 P.2d 531 (1986) (quoting Glass v. Stahl Specialty Co., 97 Wn.2d 880, 887, 652 P.2d 948 (1982)).

[44] See RCW 60.04.081(3) (allowing adjudication of a lien prior to an action to foreclose the lien).

[45] RCW 60.04.081(4) (emphasis added).

[46] See RCW 60.04.081(4); see also RCW 60.08.081(1) ("Any owner of real property subject to a recorded claim of lien . . . who believes the claim of lien to be frivolous and made without reasonable cause, *or* clearly excessive may apply by motion. . . .") (emphasis added).

lien is "frivolous and made without reasonable cause."[47]  Moreover, "shall"

indicates that these remedies are mandatory, and courts do not have discretion

in deciding which remedy is appropriate.[48]

We presume the legislature knew that "claiming an excessive amount"

with bad faith or an intent to defraud could result in release of the lien.[49]  But

RCW 60.04.081 limits the remedy for a "clearly excessive" lien to reduction of the

lien's face value and allows release only where a lien is frivolous.[50]  Thus, the

proscriptive language in RCW 60.04.081(4) eliminates the possibility of release

of a lien where it is "clearly excessive" but not frivolous.[51]

We also cannot read RCW 60.04.081(4) to allow release of a

non-frivolous, excessive lien even if made in bad faith or with intent to defraud

because it would read additional terms into the statute and undermine the

---

[47] RCW 60.04.081(4).

[48] Erection Co. v. Dep't of Labor & Indus. of State of Wash., 121 Wn.2d 513, 518, 852 P.2d 288 (1993).

[49] CHG Int'l, 23 Wn. App. at 426; see Hangman Ridge, 105 Wn.2d at 789.

[50] RCW 60.04.081(4).

[51] We note that our Supreme Court in Williams described the proceeding created by RCW 60.04.081 as "a summary proceeding in which a property owner may quickly obtain the *release of a lien* that is frivolous and made without reasonable cause or is clearly excessive."  172 Wn.2d at 699 (emphasis added) (quoting W.R.P., 85 Wn. App. at 749).  Because RCW 60.04.081(4) distinguishes the remedies for frivolous liens from clearly excessive liens, we do not believe either the Williams or W.R.P. courts were attempting to redraft the statute through a casual description.  See In re Marriage of Ruff and Worthley, 198 Wn. App. 419, 425, 393 P.3d 859 (2017) ("Courts cannot amend statutes by judicial construction.").

statute's mandatory language limiting each remedy to a particular problem.[52] We note that in Singh, this court cited pre-1991 cases to describe a "clearly excessive" lien as one "claimed with an intent to defraud or in bad faith."[53] But this reading would undercut the purpose of the clearly excessive provision of RCW 60.04.081. For example, if a lien claimant *accidentally* filed a lien for $100,000 on $1,000 worth of work without any bad faith or an intent to defraud, then the property owner would not be entitled to a reduction. The language of RCW 60.04.081 does not include such a bad faith or intent to defraud requirement.

To the extent that pre-1991 cases discussing release of excessive liens may still have vitality, they are not controlling where a court considers a motion made under RCW 60.04.081. In a summary lien proceeding, a court must reduce rather than release a "clearly excessive" lien.

In absence of any statutory definition for "clearly excessive,"[54] we must read those words to give them their ordinary meaning.[55] Because they are

---

[52] See Ruff and Worthley, 198 Wn. App. at 425 ("We cannot read into a statute that which we may believe 'the legislature has omitted, be it an intentional or inadvertent omission.'") (internal quotation marks omitted) (quoting In re Custody of Smith, 137 Wn.2d 1, 12, 969 P.2d 21 (1998), aff'd sub nom Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)).

[53] 120 Wn. App. at 10.

[54] See RCW 60.04.011.

[55] Univ. of Washington v. City of Seattle, 188 Wn.2d 823, 837, 399 P.3d 519 (2017).

undefined by statute, we may look to standard English dictionaries.[56] In standard English, something "excessive" is "characterized by or present in excess."[57] Something is present in "excess" when there is "[m]ore than or above the usual or specified amount."[58] "Clearly" means "without doubt or question."[59] Thus, for a lien to be "clearly excessive," it must be unquestionably characterized by being far above the usual or agreed amount.

This accords with the requirement in RCW 60.04.021 that a lien is authorized only "for the contract price" of what the claimant provided. The statute defines "contract price" as "the amount agreed upon by the contracting parties, or if no amount is agreed upon, then the customary and reasonable charge therefor."[60] In providing a remedy for a clearly excessive lien, the legislature created a mechanism by which a court could efficiently reduce a lien where the amount claimed on the face of the lien is unquestionably far greater than the value of the goods or services provided.

But this remedy is not intended to be used to harm lien claimants, who are the very persons the legislature enacted chapter 60.04 RCW to protect.[61] Nor

---

[56] Quinault Indian Nation v. Imperium Terminal Servs., LLC, 187 Wn.2d 460, 477, 387 P.3d 670 (2017).

[57] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 792 (2002).

[58] Id.

[59] Id. at 420.

[60] RCW 60.04.011(2).

[61] See Williams, 172 Wn.2d at 697 ("The claimants are therefore parties 'intended to be protected' by the statute, RCW 60.04.900, and we will liberally construe the statute to protect them.").

should the availability of this summary proceeding to reduce the value of a clearly excessive lien be used "as a substitute for trial where there is a legitimate dispute about the amount of work done and money paid."[62]  And we must read the statute in context.  Congruent with the requirement that a party challenging a lien in this summary proceeding must show that it is frivolous "beyond legitimate dispute,"[63] a party challenging a lien as clearly excessive must show that the face value of the lien is *unquestionably* far greater than the value of the goods or services provided.

Here, the lien purports to encumber 20 specific units and a common storage area in building E of the condominium complex.  This approach failed to properly account for how lien statutes and condominium statutes interact.[64]

A condominium is comprised of two legally distinct physical parts: units and common elements.[65]  The unit "is the subject of individual ownership" and "is legally a separate parcel of realty, separately owned, taxed, and financed."[66]  A

---

[62] S.D. Deacon, 150 Wn. App. at 90; see Gray v. Bourgette Const., LLC, 160 Wn. App. 334, 341, 249 P.3d 644 (2011) ("[A]s we cautioned recently, '[t]rial courts should take care not to let the frivolous lien statute be misused to deprive contractors of their right to trial on a lien claim.'") (second alteration in original) (quoting S.D. Deacon, 150 Wn. App. at 89).

[63] S.D. Deacon, 150 Wn. App. at 91.

[64] Chapter 60.04 RCW is the germane lien statute.  Because Woodley's condominium complex was created before July 1, 1990, portions of both the Horizontal Property Regimes Act, ch. 64.32 RCW, and the Condominium Act, ch. 64.34 RCW, apply.  RCW 64.34.010.

[65] 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 12.2, at 21-22 (2nd ed. 2004); RCW 64.32.010(1).

[66] 18 STOEBUCK & WEAVER, supra, at 22; RCW 64.32.040.

unit's boundaries are "the interior surfaces of the perimeter walls, floors, ceilings, windows and doors thereof."[67] Common elements are, generally, "all parts of a condominium other than the units."[68] Common elements include the building's roof.[69] Unit owners collectively own the condominium's common elements as tenants in common.[70] Generally, an owners' association does not own any of the condominium's real property.[71]

An owners' association "is a statutorily required unit owners' profit or nonprofit corporation, which has powers to manage common elements and to perform other functions" as required by statute or by private agreement.[72] Those private agreements include the "declaration," the legal document creating the condominium and defining the association's powers.[73] By statute, an association has the power to make contracts and incur liabilities, hire managing agents, and regulate "maintenance, repair, [and] replacement" of common elements in a condominium.[74] Accordingly, an association has a statutory right of access related to its duties to repair and maintain:

---

[67] RCW 64.32.010(1).

[68] 18 STOEBUCK & WEAVER, supra, at 22.

[69] RCW 64.32.010(6)(a)-(b).

[70] 18 STOEBUCK & WEAVER, supra, at 22; RCW 64.32.050(1).

[71] 18 STOEBUCK & WEAVER, supra, at 23.

[72] Id.

[73] Id. at 22.

[74] RCW 64.34.304(1).

The association . . . shall have the irrevocable right . . . to have access to each [unit] from time to time during reasonable hours as may be necessary for the maintenance, repair, or replacement of any of the common [elements] therein or accessible therefrom, or for making emergency repairs therein necessary to prevent damage to the common [elements] or to another apartment or apartments.[75]

Typically, an association pays its liabilities and then levies assessments on unit owners who, in turn, pay the association.[76] An association may file a lien against the unit of an owner who fails to pay assessments.[77]

A contractor may file a mechanics' or materialmen's lien against an entire condominium complex in the same way it would file a lien against an individual property, such as a single-family house, by naming an owner's association as the indebted person and listing the whole condominium as the property against which a lien is claimed.[78] When a contractor files a lien naming an owner's association as the indebted person and describing the whole condominium as the property against which a lien is claimed, then a judgment enforcing the lien extends to all units in the condominium and each owner's interest in the common

---

[75] RCW 64.32.050(6). We note that in this case, Servpro's services to Woodley were for only the interior walls and ceiling of her unit, which are not common elements.

[76] 18 STOEBUCK & WEAVER, supra, at 23; RCW 64.34.360(3), .364.

[77] RCW 64.34.364.

[78] RCW 64.32.070; see RCW 64.34.368(1) ("[A] judgment for money against the association perfected under RCW 4.64.020 is a lien in favor of the judgment lienholder against all the units in the condominium and their interest in the common elements at the time the judgment was entered. No other property of a unit owner is subject to the claims of the creditors of the association.").

elements.[79] The collective lien is released if the association pays the total balance due or, in the alternative, an individual unit is released if the unit owner pays the lienholder her proportional share of the total amount owed by the association.[80] Notably, this proportional share is not based on the value of the benefit to a unit but on the "fractional and proportionate amounts attributable to each of the [units] affected," which must be computed by reference to the unit owner's ownership percentage of the entire condominium "appearing on the declaration."[81]

A contractor can also file a lien against an individual unit improved by the contractor's services where the unit owner or the owner's agent "expressly consented" to the services.[82]

Servpro erred by blending these two distinct methods of filing liens for work performed in a condominium. Servpro filed a lien listing individual units where it worked, naming the individual owners of those 20 units, naming the association as the indebted person, and providing a face value that includes the value of work benefiting those 20 units individually as well as work benefiting the condominium's common elements. The face value of Servpro's lien is

---

[79] RCW 64.32.070; RCW 64.34.368.

[80] 18 STOEBUCK & WEAVER, § 12.6, at 42 (citing RCW 64.34.368(3)); see also RCW 64.32.070(2).

[81] RCW 64.32.070(2). We note the Condominium Act, RCW 64.34.368(3), expresses this same concept as the "ratio which that unit owner's allocated common expense liability bears to the allocated common expense liabilities of all unit owners whose units are subject to the lien."

[82] RCW 64.32.070(1).

$183,945.09, but Servpro agrees the maximum value of the services provided to Woodley's unit was $6,001.90.[83] And the lien provides no information on its face to let another party know the amount owed by each owner or by the association.

Servpro argues that no reasonable person could look at the lien and believe it is intended to encumber Woodley's individual unit for its face value, but it provides no authority for this proposition. And this argument misunderstands the legal effect of a lien on real property. A lien encumbers property to secure payment of a debt, and encumbrances diminish the value of the property.[84] Unquestionably, then, Servpro's lien clouds the title to Woodley's unit for an amount far above the usual or specified value of its services benefiting Woodley. The lien is clearly excessive for purposes of RCW 60.04.081.

Attorney Fees

Both parties request fees. RAP 18.1(a) authorizes an award of attorney fees if authorized by law. RCW 60.04.081(4) requires that a court award attorney fees to the movant if she shows the lien is frivolous or clearly excessive. Because Woodley demonstrated that Servpro's lien is clearly excessive, we award her attorney fees upon her compliance with RAP 18.1.

---

[83] See Report of Proceedings (July 14, 2017) at 21 (stating the portion of the lien associated with Woodley's unit is "like $6,000"); Appellant's Br. at 8 ("In total, Servpro billed $6,001.90 associated with services at Unit 208."); Appellant's Br. at 13 ("Respondent's unit total was $6,001."); Clerk's Papers at 195-96 (itemized invoice showing a total of $6,001.90 in services and taxes for Woodley's unit).

[84] S.D. Deacon, 150 Wn. App. at 89; Robinson v. Khan, 89 Wn. App. 418, 421, 948 P.2d 1347 (1998) (quoting Merlin v. Rodine, 32 Wn.2d 757, 760, 203 P.2d 683 (1949)).

## CONCLUSION

The trial court erred by determining that Servpro's lien was frivolous and releasing it. Although Servpro's lien may ultimately be invalid and unenforceable, the narrow hearing authorized by RCW 60.04.081 does not allow for release of a lien based on invalidity alone.[85] Accordingly, we reverse the trial court's ruling releasing the lien.

The court correctly concluded that Servpro's lien was clearly excessive, but the court made no findings of fact about the amount by which the lien was excessive.

Therefore, we reverse the trial court ruling in part, affirm in part, and remand for proceedings consistent with this decision.

WE CONCUR:

_____

_____

Appelwick, C.J.

_____

[85] The parties vigorously debate the validity of Servpro's charges for asbestos testing. But on the existing record and briefing, neither party establishes that the validity or invalidity of the asbestos charges affects our determination that the lien is not frivolous but is clearly excessive for purposes of RCW 60.04.081.