[No. 47987-3-I. Division One. March 25, 2002.]

A.A.R. TESTING LABORATORY, INC., *Plaintiff*, v. NEW HOPE BAPTIST CHURCH, ET AL., *Respondents*, CARLETON/HART ARCHITECTURE, P.C., ET AL., *Defendants*, JDLR, INC., ET AL., *Appellants*.

*Richard L. Lambe* (of *Lambe Law Firm, P.S.*), for appellant.

444

*William L. Bishop, Jr.* and *Ann T. Marshall* (of *Bishop, Lynch & White, P.S.*), and *Lois Meltzer* (of *Sinsheimer & Meltzer, Inc., P.S.*), for respondents.

GROSSE, J. — The priority of a mechanics' or a materialmen's lien against real property is established at the time of the commencement of labor or services or on the first delivery of materials or equipment to the property. Absent a true subordination agreement, the priority of mechanics' and materialmen's liens against real property is not compromised by waiver and release agreements executed in exchange for payment through a certain date. Additional labor, services, or materials provided after that date remain protected by the statutory lien. The trial court erred in ruling to the contrary on summary judgment. We reverse and remand for trial.

## FACTS

New Hope Missionary Baptist Church of Seattle (New Hope) was destroyed by fire. In April 1997, JDLR, Inc., d/b/a Heritage Construction (Heritage), entered into a contract with New Hope for construction of a new sanctuary and church building. It is undisputed that Heritage began work on the new church on February 20, 1997. The contract price between Heritage and New Hope was approximately $1.5 million. Under the contract, Heritage agreed that title to all work covered by an "application for payment" passed to the owner at the time of payment. Heritage also warranted that once payment was made the title would be free and clear of all liens, claims, security interests, or encumbrances which had been in favor of Heritage, subcontractors, material suppliers, or other persons or entities providing labor, materials, or equipment through the date covered by the payment.

Various disagreements, change orders, and required changes ordered by the county increased the price of the project. Due to disagreements, New Hope refused to pay what Heritage claimed was due and at some point Heritage stopped work on the project. However, the parties settled this dispute and entered into a settlement agreement as of December 11, 1997. That agreement stated in part:

3. <u>Waiver and Release by Heritage</u>. Heritage hereby waives, releases and forever discharges [New Hope] and its agents, representatives, directors, officers, employees and their respective successors and assigns, of and from any and all suits, causes of action, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, liens, interest, attorneys' fees and expenses of whatever kind and nature, in law or in equity, known or unknown, which Heritage ever had or now has arising out of or in any way related to the Construction Contract or the performance or breach thereof, or for acts or omissions of [New Hope], its agents, representatives, directors, officers and/or employees occurring prior to the date of this Agreement, including without limitation the period during which financing for the Project was unavailable and work was temporarily stopped.

Heritage understood that one of the main reasons for the disagreement was that the church was underfinanced on the project. Therefore, Heritage agreed to cooperate with the church in its attempt to obtain and finalize financing for the project. The agreement provided:

5.3 <u>Project Financing</u>. Heritage has, at all material times, been fully informed and apprised of [New Hope's] arrangements for financing the project and undertook the Project with the understanding that Heritage would accommodate any financing difficulties [New Hope] may have. Heritage acknowledges and agrees that [New Hope] has obtained financing sufficient for completion of the Project under the terms and conditions of the Construction Contract as amended hereby. Heritage agrees to complete the Project, subject to Change Orders and Construction Change Directives issued by the architect.

New Hope obtained two construction loans. Herring National Bank loaned the church $1,595,000 to finance construction. New Hope granted Herring National Bank a deed of trust encumbering the property, recorded December 4, 1997. Herring National Bank was aware of problems between Heritage and New Hope and in granting the loan claims that payment of all amounts to Heritage was expressly conditioned upon Heritage's release of all rights to lien claims. However, no subordination agreement was ever signed or filed. Heritage did execute lien releases and waivers as payments were received for work in progress.

In June 1998, American Church Mortgage Company loaned New Hope $220,000 to cover additional construction costs. New Hope granted American Church Mortgage Company a deed of trust encumbering the property, recorded June 24, 1998. American Church Mortgage Company knew its deed was junior to that of Herring National Bank, but claims that disbursement of the loan proceeds was conditioned upon the release of all of Heritage's lien rights. However, as with Herring National Bank, no subordination agreement was ever executed.

The waiver and release of lien executed by Heritage on six different occasions provided:

> IN CONSIDERATION for payment of [amount certain], the undersigned hereby unconditionally and irrevocably waives and releases any mechanic's or materialmen's lien, equitable lien, stop notice, or any right against any labor and/or material bond for labor, services, materials or equipment supplied by the undersigned through [date certain] for the project owned by New Hope Missionary Baptist Church, located at 122-124 21st Avenue, Seattle, Washington.
>
> THIS WAIVER AND RELEASE OF LIEN is for the benefit of, and may be relied upon by the owner, the prime contractor, the construction lender, and the principal and surety on any labor or material bond posted for the project.
>
> THE UNDERSIGNED does hereby represent and warrant that the undersigned has fully paid for all labor and materials and any and all welfare, pension, vacation or other contribu-

tions required to be made on account of the employment of laborers or mechanics so provided by the undersigned, and does hereby agree to indemnify and hold each of the foregoing, the project, work of improvements and real property, free and harmless from and against all claims or liens through the ending date indicated herein.

The final waiver and lien release between the parties was executed on July 29, 1998 for work completed through June 30, 1998. After July 1998 there were additional disagreements between Heritage and New Hope, resulting in a breakdown in communication and in making progress payments. No additional releases or waivers were executed.

By Heritage's own calculation, New Hope paid it over $2.2 million on the project. At the hearing below, Heritage claimed there was an additional $696,479 owing that had not been paid.

Ultimately, A.A.R. Testing Laboratory, Inc. filed a complaint to foreclose on a materialmen's lien on the church project. While that and other claims were settled after the lawsuit was filed, Heritage, through its insurer The American Insurance Company, the construction lenders, and New Hope remained. The trial court granted the motion for summary judgment, holding that Herring National Bank's deed of trust was a prior and paramount lien on the subject real property, superior to the interests of all other parties to the action. It further ordered that American Church Mortgage Company's deed of trust was a prior and paramount lien superior to the interests of all other parties except Herring National Bank. The court also granted judgment in favor of the construction lenders for costs and attorney fees in the amount of $38,483.42. Heritage and The American Insurance Company appeal.

## DISCUSSION[1]

Heritage argues that the trial court erred in finding the deeds of trust prior in right to its mechanics' and materialmen's lien. We agree.[2]

■ A mechanics' or materialmen's lien is authorized by RCW 60.04.021 and arises and attaches upon the performing of labor or furnishing of materials.[3] A separate statute enacted in 1991, RCW 60.04.061, addressing the priority of liens, states:

> The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.

Mechanics' or materialmen's liens are a statutory exception to the general rule of first in time, first in right priority between creditors.[4] They are a class of "off-the-record" interests that may be senior to interests actually recorded prior to the recording of the mechanics' or materialmen's lien but after commencement of work on the project. During

---

[1] "We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Mannington Carpets, Inc. v. Hazelrigg*, 94 Wn. App. 899, 904, 973 P.2d 1103 (1999) (citing CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991)). Otherwise, we will reverse the order of summary judgment. "All facts and reasonable inferences are considered in the light most favorable to the nonmoving party . . . ." *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment orders are reviewed de novo by this court. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000).

[2] For purposes of summary judgment we assume, without determining, that Heritage's claim of lien is valid. Any issue regarding the validity of the lien is reserved for trial.

[3] RCW 60.04.021 sets forth:

> Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.

[4] *Homann v. Huber*, 38 Wn.2d 190, 197-98, 228 P.2d 466 (1951).

the period of time between commencement of work and actual recording of the claim of lien, a mechanics' or materialmen's lien has an "off-record" priority.

The priority of a lien may be changed by agreement between the possessor of the lien and the owner of the property. This situation often arises when a third-party construction lender requires the priority of its lien to be first as a condition to providing a construction loan.[5] Thus, the question posed here is whether the releases executed by Heritage altered the priority of its lien.

Heritage contends that the release of liens for work and materials through June 30, 1998 did not extinguish its inchoate right to the mechanics' and materialmen's lien that attached by commencement of work in February 1997. Heritage claims the underlying lien priority survived because the lien relates back to the commencement of work. Thus, Heritage asserts priority over the construction loan deeds of trust later recorded by Herring National Bank and American Church Mortgage Company.

We agree with Heritage. A reading of the release indicates that Heritage released only lien rights for any "labor, services, materials or equipment supplied by the undersigned [Heritage] through June 30, 1998." Payment for work done after June 30, 1998 was still secured by the statutory lien and the priority of that claim relates back to the date work began. A waiver and release of a lien claim for work done through a certain date does not extinguish the lien or change the date of commencement under the statute. The interpretation of the waiver and release agreements asserted by the construction lenders renders the underlying mechanics' and materialmen's lien rights meaningless and allows a shifting of priority dates without the existence of a corresponding subordination agreement.

The ruling below elevates the waiver and release documents to subordination agreements. The releases cannot be

---

[5] *Mut. Reserve Ass'n v. Zeran*, 152 Wash. 342, 347-48, 277 P. 984 (1929).

read as subordination agreements.[6] If the construction lenders intended the mechanics' and materialmen's lien rights possessed by Heritage to be legally subordinate to their mortgage deeds, then a subordination agreement was required. On the record before us, the trial court erred as a matter of law in finding Herring National Bank's and American Church Mortgage Company's deeds of trust superior.[7]

Considering our decision, the award of fees and costs is also reversed. An award of attorney fees and costs to a prevailing party must await the final outcome of trial.

Reversed and remanded for trial.

BAKER, J., and WEBSTER, J. Pro Tem., concur.

---

[6] While true that Heritage agreed to accommodate New Hope's financing difficulties and that Herring National Bank and American Church Mortgage Company argue they required Heritage to execute the lien releases before they would disburse loan proceeds, the lien releases are *not* subordination agreements, and none were ever executed.

[7] We do not address the arguments of Herring National Bank and American Church Mortgage Company that they may possess considerable defenses and argument regarding the propriety and timeliness of the filing of Heritage's lien and the attempted enforcement thereof. Those issues remain to be addressed at trial.