# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LENNAR MULTIFAMILY BUILDERS, LLC f/k/a LMC CONSTRUCTION, LLC, | DIVISION ONE |
| Respondent, | No. 81879-1-I |
| v. | OPINION PUBLISHED IN PART |
| SAXUM STONE, LLC, | |
| Appellant. | |

DWYER, J. — Saxum Stone, LLC appeals from the superior court's order releasing its construction lien and awarding attorney fees to Lennar Multifamily Builders, LLC. The order was entered pursuant to a proceeding initiated by Lennar to release Saxum's lien as being frivolous. Saxum asserts that the superior court erred by (1) failing to enter findings of fact demonstrating that the lien was frivolous, (2) releasing the lien as being frivolous, and (3) awarding attorney fees to Lennar. Because Saxum's lien was not frivolous, we reverse the superior court's orders releasing the lien and awarding attorney fees and costs to Lennar. Additionally, we hold that Saxum is entitled to an award of attorney fees

and costs for defending this action both in the superior court and on appeal pursuant to RCW 60.04.081(4).[1]

I

Lennar Multifamily Builders, LLC was the general contractor for the construction of Totem Lake Apartments, a construction project located in Kirkland, Washington. On February 7, 2019, Lennar subcontracted with Wall to Wall Tile & Stone, LLC to build and install quartz countertops for the project. The total amount that Lennar agreed to pay Wall to Wall under the subcontract was $480,494.

On July 16, 2019, Wall to Wall filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Oregon. The record is not clear as to whether Wall to Wall commenced work on the Totem Lake Apartments project prior to filing for bankruptcy protection. According to a declaration filed by one of Lennar's members, Wall to Wall "began its work on the Project on or about February 7, 2019." However, according to a declaration filed by one of Saxum Stone, LLC's members, Wall to Wall "started to perform labor on the Project on December 3, 2019 by fabricating, transferring, and installing quartz countertops on units on the 6th floor of the Project."

It is clear, however, that after Wall to Wall commenced the bankruptcy proceeding, Wall to Wall performed work on the Totem Lake Apartments project pursuant to the existing subcontract. It did so as a debtor in possession. Wall to

---

[1] In the unpublished portion of the opinion, we address an argument advanced by Lennar that was not adequately briefed on appeal. In that section, we also provide guidance to the superior court should this issue arise on remand.

Wall continued to fabricate and install the quartz countertops until March 24, 2020, at which point Wall to Wall ceased to engage in any further work on the project.

On April 6, 2020, Wall to Wall's chapter 11 bankruptcy proceeding was converted to a chapter 7 proceeding. At that point, according to a declaration filed by one of Lennar's members, Lennar had paid Wall to Wall for all of the quartz material that was needed to complete the subcontract, even though Wall to Wall had not finished installing the countertops. The remaining uninstalled quartz material was stored in Wall to Wall's warehouse in Kent.

As of March 24, 2020, according to a declaration filed by one of Saxum's members, Wall to Wall held an outstanding account receivable for Lennar in the amount of $73,102.83. This account receivable regarded labor performed and materials supplied under the subcontract. Lennar does not dispute the existence of this account receivable.

On May 1, 2020, Saxum entered into an agreement with the trustee of Wall to Wall's bankruptcy estate to purchase substantially all of the estate's assets for a price of $4,364,519. That same day, Lennar received notice from the trustee of the trustee's intent to sell substantially all of the assets possessed by Wall to Wall's bankruptcy estate to Saxum.

The agreement entered into by the trustee and Saxum, entitled "Agreement for Sale and Purchase of Business Assets" (asset purchase agreement), stated, in part:

> Seller hereby sells to Buyer and Buyer hereby purchases from
> Seller all of the Assets of the Estate useful in the Business,

3

> *including, but not limited* to accounts receivable, equipment, inventory, supplies, the real property leases listed in Schedule 1.2, software, licenses, Intellectual Property, books and records, tools, vehicles listed on Schedule 1.1, all claims, if any, against Buyer, its members, agents, attorneys, officers, and directors (**"Buyer Claims"**).

(First emphasis added.)

The agreement also excluded certain specified assets:

> [T]he purchased assets do not include: a) cash; b) vehicle leases with Enterprise Fleet Management, Inc. (**"Enterprise"**); c) claims and causes of action, if any, against present or former insiders or otherwise listed in paragraphs 4 and 8 of the Conversion Declaration filed on April 20, 2020 as Lead Case Docket No. 356 (the **"Conversion Declaration"**)[2] (other than claims against Buyer and Buyer's members) or arising under or pursuant to [various sections] of the Bankruptcy Code, other than the Buyer Claims; d) Benefit Plans of the Seller; e) any vehicles not listed on Schedule 1.1 and any other items listed in paragraphs 3(i)-(j) of the Conversion Declaration; and f) claims pursuant to any insurance policy insuring the Debtors' for general liability or for acts of officers and owners of Debtors, other than the Buyer Claim (the **"Assets"**), free and clear of all mortgages, pledges, liens, security interests, options, claims (including but not limited to any claim for successor liability), charges, other encumbrances, interests, or restrictions of any kind (collectively, **"Liens"**).

The parties agree that, pursuant to the asset purchase agreement, Saxum was not assigned the subcontract concerning the Totem Lake Apartments project.[3]

On May 14, 2020, the bankruptcy court entered an order approving the asset purchase agreement. This order stated that "[o]nly one response was filed – a limited objection by Baffco Enterprises, LLC." This order also provided that

---

[2] The referenced Conversion Declaration is not in the record on appeal.

[3] In its opening brief, Saxum states that "[t]his case does not involve an assignment or assumption of future contractual performance." Br. of Appellant at 17. Likewise, in its response brief, Lennar states that the asset purchase agreement "did not assign the . . . Subcontract to Saxum." Br. of Resp't at 4.

4

"[t]he Trustee may sell the assets free and clear of all liens, claims, and encumbrances . . . because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been established." Additionally, the order stated that "[t]he terms and conditions of the [asset purchase agreement] are approved."

That same day, the trustee executed a bill of sale, which assigned the assets referenced in the asset purchase agreement to Saxum.

On June 12, 2020, an attorney representing Saxum sent an attorney representing Lennar a letter demanding payment of the outstanding account receivable. On June 15, Lennar's attorney responded by informing Saxum's attorney that Lennar would not pay any amount due on the account receivable.

On June 22, 2020, Saxum recorded a lien on the Totem Lake Apartments property in the amount of $73,149.90. Consistent with the language for claim of lien forms recommended by RCW 60.04.091(2), the claim of lien filed declared: "If the claimant is the assignee of this claim state so here: Claimant is the assignee of Wall to Wall Tile & Stone."

On July 28, 2020, Lennar filed a motion in the King County Superior Court pursuant to RCW 60.04.081, a statute providing a mechanism for a party to challenge a frivolous construction lien. In the motion, Lennar asserted that Saxum's lien was frivolous and requested that the trial court release the lien and award attorney fees and costs to Lennar. Lennar claimed that Saxum's lien was frivolous because (1) Saxum did not perform any lienable work on the Totem Lake Apartments project, (2) Saxum was not assigned the subcontract, and (3)

5

Wall to Wall did not record a lien. Also in this motion, Lennar requested that the superior court order Saxum to show cause.

On August 5, 2020, a commissioner of the King County Superior Court granted the motion to show cause. On August 20, the superior court held a show cause hearing. During the hearing on Lennar's motion to release Saxum's lien, the superior court opined that Saxum was not assigned the lien because (1) Saxum was not assigned the subcontract, and (2) Wall to Wall did not record the lien:

> [SAXUM'S COUNSEL]: . . . And it's -- the key point for this Materialmen's Lien statute is that it's the debt and the cause of action that was clearly assigned; there's a Bill of Sale from the Chapter 7 trustee.
> Wall To Wall, it's undisputable that they fall under the statute. There's no --
> THE COURT: Oh, they definitely fall under it. I mean they did the work. They would fall under it.
> The question is, because you didn't buy the sub -- because you didn't get the subcontract, I mean the question is, and they didn't file a lien, whether you fall under it.

On August 21, 2020, the superior court entered an order releasing the lien and awarding attorney fees and costs to Lennar. The order did not contain written findings of fact demonstrating that Saxum's claim of lien was frivolous.

Saxum appeals.

                                    II

As an initial matter, Saxum contends that the superior court erred by not entering findings of fact demonstrating that Saxum's lien was frivolous. We disagree.

RCW 60.04.081[4] "creates a summary proceeding in which a property owner may quickly obtain the release of a lien that is frivolous and made without reasonable cause." W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc., 85 Wn. App. 744, 749, 934 P.2d 722 (1997). This "statutory procedure is . . . in the nature of a trial by affidavit." W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 750.

We have previously noted that motions filed pursuant to RCW 60.04.081 initiate a "special proceeding." Andries v. Covey, 128 Wn. App. 546, 550, 113 P.3d 483 (2005). In such a special proceeding, strict compliance with the CR 52 mandate concerning the entry and content of findings of fact is not required. CR 81(a). Indeed, we have previously explained that RCW 60.04.081 "contains no

---

[4] RCW 60.04.081 provides:
(1) Any owner of real property subject to a recorded claim of lien under this chapter, or contractor, subcontractor, lender, or lien claimant who believes the claim of lien to be frivolous and made without reasonable cause, or clearly excessive may apply by motion to the superior court for the county where the property, or some part thereof is located, for an order directing the lien claimant to appear before the court at a time no earlier than six nor later than fifteen days following the date of service of the application and order on the lien claimant, and show cause, if any he or she has, why the relief requested should not be granted. The motion shall state the grounds upon which relief is asked, and shall be supported by the affidavit of the applicant or his or her attorney setting forth a concise statement of the facts upon which the motion is based.
        (2) The order shall clearly state that if the lien claimant fails to appear at the time and place noted the lien shall be released, with prejudice, and that the lien claimant shall be ordered to pay the costs requested by the applicant including reasonable attorneys' fees.
        (3) If no action to foreclose the lien claim has been filed, the clerk of the court shall assign a cause number to the application and obtain from the applicant a filing fee pursuant to RCW 36.18.016. If an action has been filed to foreclose the lien claim, the application shall be made a part of that action.
        (4) If, following a hearing on the matter, the court determines that the lien is frivolous and made without reasonable cause, or clearly excessive, the court shall issue an order releasing the lien if frivolous and made without reasonable cause, or reducing the lien if clearly excessive, and awarding costs and reasonable attorneys' fees to the applicant to be paid by the lien claimant. If the court determines that the lien is not frivolous and was made with reasonable cause, and is not clearly excessive, the court shall issue an order so stating and awarding costs and reasonable attorneys' fees to the lien claimant to be paid by the applicant.
        (5) Proceedings under this section shall not affect other rights and remedies available to the parties under this chapter or otherwise.

requirement for entry of findings of fact and conclusions of law." W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 750. However, "[a]t a minimum, the trial court's reasoning for entering the order should be clearly set out in the order itself." W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 750.

Nevertheless, Saxum contends that our opinion in S.D. Deacon Corp. of Washington v. Gaston Bros. Excavating, Inc., 150 Wn. App. 87, 206 P.3d 689 (2009), required the superior court to enter findings of fact demonstrating that Saxum's lien was frivolous in order to release the lien. Not so. In that case, the parties disputed facts that were material to the superior court's determination of whether a construction lien was frivolous. S.D. Deacon Corp., 150 Wn. App. at 95. Because there was a material factual dispute as to the validity of the lien, we explained that "the court must make specific findings establishing that the lien is so meritless as to justify depriving the claimant of the opportunity to present live testimony and cross-examine witnesses." S.D. Deacon Corp., 150 Wn. App. at 96.

Here, however, the material facts were not in dispute. Moreover, the superior court's reasoning for releasing the lien is apparent from the record and the order. During the hearing on Lennar's motion to release Saxum's lien, the following exchange occurred between Saxum's counsel and the superior court:

> [SAXUM'S COUNSEL]: . . . And it's -- the key point for this Materialmen's Lien statute is that it's the debt and the cause of action that was clearly assigned; there's a Bill of Sale from the Chapter 7 trustee.
> Wall To Wall, it's undisputable that they fall under the statute. There's no --
> THE COURT: Oh, they definitely fall under it. I mean they did the work. They would fall under it.

The question is, because you didn't buy the sub -- because you didn't get the subcontract, I mean the question is, and they didn't file a lien, whether you fall under it.

The day after the hearing, the superior court entered its order granting Lennar's motion. This order was entitled, "ORDER TO RELEASE FRIVOLOUS LIEN AND FOR AWARD OF ATTORNEY FEES PURSUANT TO RCW 60.04.081." Based on this record, the superior court's reasoning for releasing Saxum's lien is apparent.

Accordingly, Saxum's assignment of error fails.

III

Saxum next contends that the superior court erred by releasing Saxum's lien as being frivolous. Because the lien was assigned to Saxum pursuant to the asset purchase agreement, which was approved by a bankruptcy court order, we agree.

A

We review a superior court's interpretation of chapter 60.04 RCW de novo. Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc., 115 Wn. App. 384, 390, 62 P.3d 548 (2003). "Mechanics' and materialmen's liens are creatures of statute, in derogation of common law, and therefore must be strictly construed to determine whether a lien attaches." Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009). "But if it is determined a party's lien is covered by chapter 60.04 RCW, the statute is to be liberally construed to provide security for all parties intended to be protected by its provisions." Estate of Haselwood, 166 Wn.2d at 498 (citing RCW 60.04.900).

A court's fundamental objective when determining the meaning of a statute "is to ascertain and carry out the Legislature's intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "Where a 'statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Inland Empire Dry Wall Supply Co. v. W. Sur. Co., 189 Wn.2d 840, 843, 408 P.3d 691 (2018) (quoting Campbell & Gwinn, LLC, 146 Wn.2d at 9-10). A statute's plain meaning "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Campbell & Gwinn, LLC, 146 Wn.2d at 11.

"To be frivolous, a lien must be improperly filed beyond legitimate dispute." Pac. Indus., Inc. v. Singh, 120 Wn. App. 1, 5, 86 P.3d 778 (2003) (citing W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 752). A lien "is frivolous 'only if it presents no debatable issues and is so devoid of merit that it had no possibility of succeeding.'" Pac. Indus., Inc., 120 Wn. App. at 6 (quoting Intermountain Elec., Inc., 115 Wn. App at 394). "Every frivolous lien is invalid, but not every invalid lien is frivolous." Pac. Indus., Inc., 120 Wn. App. at 6.

B

It is well established in Washington that "[a] lien, like a mortgage, is a chose in action." Mueller v. Rupp, 52 Wn. App. 445, 450, 761 P.2d 62 (1988) (citing In re Estate of Adler, 116 Wash. 484, 489, 199 P. 762 (1921); Congregational Church Bldg. Soc'y v. Scandinavian Free Church of Tacoma, 24 Wash. 433, 436-37, 64 P. 750 (1901)). "A chose in action is personal property."

Mueller, 52 Wn. App. at 450-51 (citing In re Estate of Plasterer, 49 Wn.2d 339, 341, 301 P.2d 539 (1956); Ennis v. Ring, 49 Wn.2d 284, 289, 300 P.2d 773 (1956)).

> The relevant statute provides that, subject to certain notice requirements,

> any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.

RCW 60.04.021.

Under this statute, a construction lien[5] "arises and attaches upon the performing of labor or furnishing of materials." A.A.R. Testing Lab., Inc. v. New Hope Baptist Church, 112 Wn. App. 442, 448, 50 P.3d 650 (2002) (citing RCW 60.04.021). This interpretation of RCW 60.04.021 is consistent with the statutory language of RCW 60.04.061, which addresses the priority of liens:

> The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded *at the time of commencement of labor or professional services or first delivery of materials or equipment* by the lien claimant.

(Emphasis added.)

Construction liens "are a class of 'off-the-record' interests that may be senior to interests actually recorded prior to the recording of the . . . lien but after

---

[5] "In 1991, Washington's comprehensive mechanics' and materialmen's lien statute was repealed and replaced with a revised and recodified law." Diversified Wood Recycling, Inc. v. Johnson, 161 Wn. App. 891, 902 n.14, 251 P.3d 908 (2011) (citing LAWS OF 1991, ch. 281; ch. 60.04 RCW). "'The title "mechanics' and materialmen's lien" is still used in the RCW, but the liens are called by the more inclusive title, "construction liens," in this subchapter.'" Diversified Wood Recycling, Inc., 161 Wn. App. at 902 n.14 (quoting 27 MARJORIE DICK RAMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 4.51, at 347 (1998)).

commencement of work on the project." A.A.R. Testing Lab., Inc., 112 Wn. App. at 448. "During the period of time between commencement of work and actual recording of the claim of lien, a [construction] lien has an 'off-record' priority." A.A.R. Testing Lab., Inc., 112 Wn. App. at 448-49. Construction liens attach to the "lot, tract, or parcel of land which is improved." RCW 60.04.051.

Notably, under chapter 60.04 RCW, construction liens are assignable. RCW 60.04.121 provides: "Any lien or right of lien created by this chapter and the right of action to recover therefor, shall be assignable so as to vest in the assignee all rights and remedies of the assignor." The statutory scheme of chapter 60.04 RCW demonstrates that a construction lien is assignable regardless of whether that lien has been recorded. Indeed, the language that is recommended, by statute, to be used on forms for recording construction liens, provides, in pertinent part: "IF THE CLAIMANT IS THE ASSIGNEE OF THIS CLAIM SO STATE HERE." RCW 60.04.091(2).

C

Wall to Wall's bankruptcy estate possessed a construction lien right on the land on which the Totem Lakes Apartments project was situated. On July 16, 2019, Wall to Wall filed for chapter 11 bankruptcy. Although the record is not clear as to whether Wall to Wall had commenced work prior to commencing the bankruptcy proceeding, Wall to Wall continued to fabricate and install quartz countertops on the Totem Lake Apartments project through March 2020.

Once Wall to Wall provided and installed quartz material on the Totem Lake Apartments project, a construction lien arose and attached to the land on

12

which the Totem Lake Apartments project was located.[6]  See RCW 60.04.021;

A.A.R. Testing Lab., Inc., 112 Wn. App. at 448.

The construction lien that arose and attached when Wall to Wall

commenced lienable work on the Totem Lake Apartments project was assigned

to Saxum pursuant to the bill of sale and asset purchase agreement, which was

approved by a bankruptcy court order.  The asset purchase agreement stated, in

part:

> Seller hereby sells to Buyer and Buyer hereby purchases from
> Seller all of the Assets of the Estate useful in the Business,
> *including, but not limited* to accounts receivable, equipment,
> inventory, supplies, the real property leases listed in Schedule 1.2,
> software, licenses, Intellectual Property, books and records, tools,
> vehicles listed on Schedule 1.1, all claims, if any, against Buyer, its
> members, agents, attorneys, officers, and directors (**"*Buyer
> Claims*"**).

(First emphasis added.)

In other words, the assets that were encompassed by the asset purchase

agreement were not limited to those assets that were specifically listed in the

writing.  Although the asset purchase agreement excluded certain assets, the

construction lien in dispute was not listed as an excluded asset.  Accordingly, the

---

[6] 11 U.S.C. § 541 explains what assets are part of the bankruptcy estate after a party files for bankruptcy:
> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
> > . . . .
> > (7) Any interest in property that the estate acquires after the commencement of the case.
> The exceptions provided in 11 U.S.C. § 541(b) and (c)(2) do not apply to the construction lien in dispute.  Accordingly, regardless of whether Wall to Wall commenced work on the Totem Lake Apartments project prior to filing for bankruptcy, the bankruptcy estate clearly possessed the construction lien at the time the sale was approved by the bankruptcy court.

construction lien was assigned to Saxum pursuant to the asset purchase agreement, as approved by the bankruptcy court.

Lennar asserts that Saxum was not assigned the construction lien. This is so, according to Lennar, because "the cause of action <u>did not exist</u> at any time during the pendency of the [Wall to Wall] bankruptcy or at the time of the bankruptcy sale."[7] We disagree. As previously explained, a construction lien "arises and attaches upon the performing of labor or furnishing of materials." <u>A.A.R. Testing Lab., Inc.</u>, 112 Wn. App. at 448. As such, the cause of action arose when Wall to Wall fabricated and installed the quartz material in the Totem Lake Apartments project.

Lennar also contends that Saxum does not fall within the class of persons contemplated by chapter 60.04 RCW as entitled to claim a construction lien. According to Lennar, "RCW 60.04.021 is explicit regarding those who come under the statute's terms and quantifies this group as '<u>any person furnishing labor, professional services, materials, or equipment for the improvement of real property</u>.'"[8] But this argument is off the mark. To be clear, RCW 60.04.121 provides: "Any lien or right of lien created by this chapter and the right of action to recover therefor, shall be assignable *so as to vest in the assignee all rights and remedies of the assignor*." (Emphasis added.) Therefore, Saxum—as assignee of the construction lien possessed by Wall to Wall's bankruptcy estate—is entitled to enforce the construction lien.

---

[7] Br. of Resp't at 23.
[8] Br. of Resp't at 9-10.

14

Lennar next asserts that chapter 60.04 RCW requires that only the entity who performed lienable work can record a construction lien even if the right of lien is assigned. We disagree. In Lennar's view of the law, that entity must record the lien prior to assignment and, if it does not, the assignee engages in a frivolous frolic by attempting enforcement. The basis for Lennar's assertion lies in RCW 60.04.091, which states:

> Every person claiming a lien under RCW 60.04.021 shall file for recording . . . a notice of claim of lien not later than ninety days after the person has ceased to furnish labor, professional services, materials, or equipment or the last date on which employee benefit contributions were due.

Lennar claims that this language requires that only the entity who performed lienable work can record the lien—to the exclusion of assignees. The folly of this contention, however, is made plain by a provision of the recommended claim of lien form in this same section. This form states: "IF THE CLAIMANT IS THE ASSIGNEE OF THIS CLAIM SO STATE HERE." RCW 60.04.091(2).

Lennar asserts that the quoted language in RCW 60.04.091(2) must be interpreted to apply only to notice of claim forms that are filed to amend an already-filed notice of claim of lien.[9] To the contrary, RCW 60.04.121 provides: "*Any lien or right of lien* created by this chapter and the right of action to recover therefor, *shall be assignable* so as to vest in the assignee all rights and remedies of the assignor." (Emphasis added.) This broad and inclusive language clearly

---

[9] RCW 60.04.091(2) authorizes parties to amend a notice of claim of lien under certain circumstances: "Where an action to foreclose the lien has been commenced such notice of claim of lien may be amended as pleadings may be by order of the court insofar as the interests of third parties are not adversely affected by such amendment."

authorizes the assignment of a construction lien regardless of whether that lien has already been recorded. Additionally, because an assignee is vested with all of the rights of the assignor, an assignee is plainly entitled to file a notice of claim of lien under RCW 60.04.091.

Finally, Lennar avers that RCW 60.04.191 prevented the construction lien that was possessed by Wall to Wall's bankruptcy estate from being assigned to Saxum by means of the asset purchase agreement. The cited statute provides:

> Nothing in this chapter shall be construed to impair or affect the right of any person to whom any debt may be due for the furnishing of labor, professional services, material, or equipment to maintain a personal action to recover the debt against any person liable therefor.

RCW 60.04.191.

According to Lennar, "it is impossible to reconcile that [Wall to Wall]'s rights could be transferred free and clear through bankruptcy when RCW 60.04 itself prevents [Wall to Wall]'s rights from being impaired."[10] But again, RCW 60.04.121 expressly authorizes the assignment of construction liens. And, in any event, Wall to Wall forfeited any right that it may have otherwise had in the lien to the bankruptcy estate when it filed for bankruptcy. See 11 U.S.C. § 541. We decline to hold that RCW 60.04.191 prevented the construction lien from being assigned to Saxum pursuant to the bill of sale, asset purchase agreement, and bankruptcy court order.

In sum, chapter 60.04 RCW authorizes the assignment of a construction lien regardless of whether that lien has already been recorded. Saxum was

---

[10] Br. of Resp't at 18.

assigned the construction lien pursuant to the bill of sale and asset purchase agreement, which was approved by the bankruptcy court.

Accordingly, the trial court erred by releasing Saxum's lien.[11]

IV

Saxum asserts that, because its lien was not frivolous, the superior court erred by awarding attorney fees and costs to Lennar. We agree.

In a summary frivolous lien proceeding, the prevailing party is statutorily entitled to an award of attorney fees:

> If, following a hearing on the matter, the court determines that the lien is frivolous and made without reasonable cause, or clearly excessive, the court shall issue an order releasing the lien if frivolous and made without reasonable cause, or reducing the lien if clearly excessive, *and awarding costs and reasonable attorneys' fees to the applicant to be paid by the lien claimant*. If the court determines that the lien is not frivolous and was made with reasonable cause, and is not clearly excessive*, the court shall issue an order so stating and awarding costs and reasonable attorneys' fees to the lien claimant to be paid by the applicant*.

RCW 60.04.081(4) (emphasis added); accord W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 753 ("Attorney fees are mandatory for the prevailing party under RCW 60.04.081(4).").

Additionally, we have interpreted RCW 60.04.081(4) to encompass attorney fees incurred by the prevailing party on appeal. See, e.g., W.R.P. Lake Union Ltd. P'ship, 85 Wn. App. at 753; Intermountain Elec., Inc., 115 Wn. App. at 395-96.

---

[11] Saxum also asserts that it was assigned the construction lien merely by purchasing the account receivable from the bankruptcy trustee. According to Saxum, "it is the assignment of the debt alone that confers Saxum's rights as a lien claimant under RCW 60.04." Br. of Appellant at 17. Because Saxum was assigned the construction lien under the plain terms of the asset purchase agreement, we need not address this argument.

Because Saxum's lien is not frivolous, the award of attorney fees to Lennar is reversed.  On remand, Saxum is entitled to an award of attorney fees and costs for defending this action in both the superior court and on appeal.

The remainder of this opinion has no precedential value.  Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.  See RCW 2.06.040.

V

We next address an argument that Lennar raised, but did not adequately brief, on appeal.  Additionally, we will attempt to provide guidance to the superior court in the event that Lennar, on remand, advances the defenses of setoff or recoupment against Saxum's lien.

A

Lennar claims that, in order for Saxum to have been assigned Wall to Wall's lien, it must have also been assigned the subcontract that was executed between Wall to Wall and Lennar.  Lennar asserts that "[t]his is embodied in statute in RCW 60.04.121, which notes, a lien or right of lien 'shall be assignable so as to vest in the assignee all rights and remedies of the assignor, *subject to all defenses thereto that might be made*.'"[12]  According to Lennar, "[w]ithout the assignment of the underlying contract, [Lennar] is precluded from raising all defenses this assignment statute contemplates."[13]  This argument was not contained within the statement of the issues in Lennar's brief as is required by

---

[12] Br. of Resp't at 19.
[13] Br. of Resp't at 19.

18

RAP 10.3(b).[14]  Instead, the issue was raised in a perfunctory manner within a section of the brief devoted to a different claim of error.

Contrary to Lennar's apparent belief, RCW 60.04.121 does not guarantee a party against whom a construction lien is filed the right to assert any defense whatsoever against the lien.  Instead, the statute permits a party to advance defenses that it is entitled to advance.  Indeed, the statute provides that an assigned construction lien is "subject to all defenses thereto that *might* be made." RCW 60.04.121 (emphasis added).  To the extent that the bankruptcy court order approving the asset purchase agreement extinguished any defenses or claims that Lennar may have otherwise been able to advance, Lennar is not entitled to advance such defenses or claims against Saxum's lien.

B

The bankruptcy court order approving the asset purchase agreement provided that the assets encompassed by the agreement were sold free and clear of all claims.  The basis for this was the bankruptcy court's ruling: "The Trustee may sell the assets free and clear of all liens, claims, and encumbrances . . . because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been established."

---

[14] The statement of the issues in Lennar's brief are:
1. Whether the trial court was required to make findings of fact to determine Saxum's lien was frivolous as a matter of law based on an undisputed record?
2. Whether Saxum did not fall under the class of people contemplated by RCW 60.04 to bring a claim of lien, rendering the claim of lien frivolous?
3. Whether Saxum had no valid right of lien when no lien was filed by Wall to Wall Tile & Stone, LLC, upon conclusion of its work on the Project, rendering the claim of lien frivolous?

Br. of Resp't at 2.

The cited authority provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) such interest is in bona fide dispute; or
    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

In an opinion not cited to us by either party, a federal circuit court observed that, in the context of 11 U.S.C. § 363(f), "[c]ourts faced with the task of defining the scope of the term 'any interest' have been unable to provide a precise definition." Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 258 (3d Cir. 2000) (citing 3 COLLIER ON BANKRUPTCY ¶ 363.06[1]). Nevertheless, the circuit court sought to give meaning to the term.

The bankruptcy court order at issue therein was one approving the sale of assets. It provided:

"The sale of the Acquired Assets and the assignment of the Assigned Contracts to Purchaser is made free and clear of all liens, mortgages, security interests, encumbrances, liabilities, claims, or *any other interests,* other than the Assumed Liabilities, whether arising before or after the Petition Date."

Folger Adam Sec., Inc., 209 F.3d at 257. In addition, the notice of auction that preceded the sale "indicated that the sale was to be 'free and clear' of all claims and other 'interests' that could be asserted against the Debtors." Folger Adam Sec., Inc., 209 F.3d at 255.

20

The circuit court opined that "the phrase 'any other interests'" in the bankruptcy court's order "would not include [the defenses of] setoff and recoupment[15] since those interests are not similar to those enumerated in the Notice of Auction." Folger Adam Sec., Inc., 209 F.3d at 260. Although the notice of auction in that case provided that the sale was to be free and clear of all claims, the circuit court reasoned that the Bankruptcy Code's definition of claim "requires an enforceable obligation of the debtor to pay the claimant." Folger Adam Sec., Inc., 209 F.3d at 260. Conversely, "a defense seeks to diminish a claim or to defeat recovery rather than to share in it." Folger Adam Sec., Inc., 209 F.3d at 260 (citing BLACK'S LAW DICTIONARY 419 (6th ed. 1990)).

However, and significantly, the circuit court suggests that a creditor may advance the defenses of recoupment and setoff only with regard to debts that arose prior to the commencement of the bankruptcy case.[16]

---

[15] "Recoupment and set-off rights are usually determined by state law." In re Lawrence United Corp., 221 B.R. 661, 669 (Bankr. N.D.N.Y. 1998). In Washington, the defense of recoupment is "'the keeping back or stopping something which is otherwise due, because the other party to the contract has violated some duty devolving upon him in the same transaction.'" J.A. Campbell Co. v. Holsum Baking Co., 15 Wn.2d 239, 253, 130 P.2d 333 (1942) (quoting Nelson Co. v. Goodrich, 159 Wash. 189, 194, 292 P. 406 (1930)). Additionally, "when setoff is asserted against an assignee [of a contract], it diminishes or defeats the assignee's claim, although the assignee has no liability in excess of the amount sued on." Nancy's Prod., Inc. v. Fred Meyer, Inc., 61 Wn. App. 645, 650-61, 811 P.2d 250 (1991). Although Saxum was not assigned the subcontract executed between Lennar and Wall to Wall, RCW 60.04.121 states that an assigned construction lien is "subject to all defenses thereto that might be made." A breach of contract may form the basis of such a defense. See 33 DAVID K. DEWOLF & MATTHEW C. ALBRECHT, WASHINGTON PRACTICE: CONSTRUCTION LAW MANUAL § 14.38, at 315 (2d ed. 2018) (listing breach of contract as a viable defense in a construction lien foreclosure proceeding); Pilch v. Hendrix, 22 Wn. App. 531, 533, 591 P.2d 824 (1979) (holding that a breach of contract counterclaim brought in a mechanics' lien foreclosure proceeding was supported by substantial evidence).

[16] With regard to the defense of recoupment, the Third Circuit stated that "we agree with the Bankruptcy Court in In re Lawrence United Corp. and hold that a right of recoupment is a defense and not an interest and therefore is not extinguished by a § 363(f) sale." Folger Adam Sec., Inc., 209 F.3d at 261. In the cited case, In re Lawrence United Corp., 221 B.R. at 671, the bankruptcy court found that the creditor therein "does not have a right of recoupment against the commissions earned postpetition." The bankruptcy court determined that "[s]uch a result would

Similarly, in <u>Marley v. United States</u>, 381 F.2d 738, 743 (Ct. Cl. 1967),[17] the Court of Claims held that a bankruptcy sale of certain causes of action against the United States "free and clear of liens" did not mean that the causes of action "were sold free and clear of the Government's *already asserted* right to setoff." (Emphasis added.) In that case, the government had asserted a right to setoff in a contract dispute with the debtor in the Court of Claims prior to the commencement of the bankruptcy proceeding. <u>Marley</u>, 381 F.2d at 741.

We note that there is a dearth of published authority in the Ninth Circuit regarding the issue of whether a defense is an "interest" within the context of 11 U.S.C. § 363(f). <u>See</u>, <u>e.g.</u>, <u>In re Fraser's Boiler Serv., Inc.</u>, No. 3:18-CV-05637-RBL, 2019 WL 1099713 (W.D. Wash. 2019) (unpublished)[18] ("[A]n 'interest in such property' includes 'obligations that may flow from ownership of property' or 'obligations that are connected to, or arise from, the property being sold.'" (quoting <u>Folger Adam Sec., Inc.</u>, 209 F.3d at 258)). Accordingly, on this record and briefing, it is unclear whether, or to what extent, the Third Circuit's reasoning in <u>Folger Adam Sec., Inc.</u>, 209 F.3d 252, is applicable to the order entered by the United States Bankruptcy Court for the District of Oregon with regard to Saxum's construction lien.

---

enable [the creditor] to receive better treatment than other general, unsecured creditors, a result inconsistent with one of the [Bankruptcy] Code's canons: equal treatment for similarly-situated creditors." <u>In re Lawrence United Corp.</u>, 221 B.R. at 671.

Additionally, the Third Circuit explained that, with regard to the defense of setoff, a creditor "must prove that it actually took a setoff, the amounts and against which contracts, before the bankruptcy filing. This does not mean it actually must have received funds, but that its accounts receivable were reduced or offset." <u>Folger Adam Sec., Inc.</u>, 209 F.3d at 263.

[17] This case was also not cited to us by either party.

[18] This case was also not cited to us by either party.

C

Given the inadequacy of the record and briefing on appeal, we decline to decide whether Lennar is entitled to assert the defenses of setoff and recoupment against Saxum's lien. However, on remand, the superior court should be aware of several things.

First, the bankruptcy court order approving the asset purchase agreement provides: "This Court shall retain jurisdiction to resolve any controversy or claim arising out of or related to the implementation of this Order or the transactions contemplated thereby." Thus, the bankruptcy court retains jurisdiction to determine whether the defenses of setoff and recoupment are "claims" within the meaning of its order. Therefore, the question of whether Lennar is entitled to assert the defenses of setoff and recoupment—either in this proceeding or in a judicial foreclosure proceeding initiated pursuant to RCW 60.04.171[19]—appears to be reserved to the bankruptcy court (not the superior court) by virtue of the wording in the order itself.

Second, even if the bankruptcy court's ruling—namely, that the trustee was authorized to sell all of the assets encompassed by the asset purchase agreement free and clear of all claims—was erroneous, Lennar is not entitled to dispute the validity of that ruling in state court. Indeed, when a "factual finding

---

[19] RCW 60.04.171 provides, in part:
The lien provided by this chapter, for which claims of lien have been recorded, may be foreclosed and enforced by a civil action in the court having jurisdiction in the manner prescribed for the judicial foreclosure of a mortgage. The court shall have the power to order the sale of the property. In any action brought to foreclose a lien, the owner shall be joined as a party. The interest in the real property of any person who, prior to the commencement of the action, has a recorded interest in the property, or any part thereof, shall not be foreclosed or affected unless they are joined as a party.

[under 11 U.S.C. § 363(f)] is made but is erroneous, or the interested party simply does not like the outcome of the sale, his *only* remedy is to collaterally attack the order to sell free and clear." In re DeCelis, 349 B.R. 465, 470 (Bankr. E.D. Va. 2006) (emphasis added). "[T]he order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed. R. Civ. P. 60(b)[20] imposes on collateral attacks on civil judgments." FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 286 (7th Cir. 2002). Accordingly, should Lennar dispute whether the construction lien was assigned to Saxum free and clear of all claims, Lennar must turn to the bankruptcy court for resolution of the question.

Third, in Lennar's reply in support of its motion to release Saxum's lien,[21] Lennar stated that it "is not asking for setoff or recoupment damages." Because Lennar both affirmatively disclaimed the defenses of setoff and recoupment in the superior court and failed to adequately brief on appeal whether it was entitled to advance such defenses, the superior court may be called upon to determine whether Lennar has forfeited any defense of setoff or recoupment. This

---

[20] Federal Rule of Bankruptcy Procedure 9024 states that "Rule 60 F. R. Civ. P. applies in cases under the Code." Federal Rule of Civil Procedure 60(b) provides, in part:
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

[21] A pleading filed in the superior court.

determination will influence any further review we may conduct, given that "'[i]t is . . . the rule that questions determined on appeal, *or which might have been determined had they been presented*, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (emphasis added) (quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)); see also RAP 2.5(c). We do not, at this time, make any determination on the question.

Fourth, in the event that Lennar is determined to be entitled to assert the defenses of setoff or recoupment, Lennar must then establish that the right in question arose before Wall to Wall filed for bankruptcy. See Folger Adam Sec., Inc., 209 F.3d at 261, 263; In re Lawrence United Corp., 221 B.R. 661, 669, 671 (Bankr. N.D.N.Y. 1998). This is a factual question that we cannot determine on the present record.

Reversed and remanded.

_____
Dwyer, J.

WE CONCUR:

_____        _____